WILLIAM BELL *v.* DONNA M. RUDOLPH ET AL.

1. GUARDIAN'S BOND. *Surety. Release. Past delinquencies. Unauthorized loan.*

As the obligation of a guardian's bond is that the estate of the wards shall be lawfully managed and delivered to them on the termination of the guardianship, a surety thereon, although released by decree of court from further liability, remains liable for loss which results from a prior unauthorized loan of the wards' money.

2. SAME. *Surety not discharged. Case.*

Such surety is not discharged by the fact that the guardian, after making the unauthorized loan of money to her insolvent husband, and its use by him in his business, gives a new bond with the husband as co-guardian, and thereafter, in their accounts, charge themselves with the sum loaned as money on hand.

3. SAME. *Decree on accounting. Effect on surety. Payment.*

Nor is such surety released by the decrees of the court approving such subsequent accounts of the guardian. Nothing but payment can discharge the obligation.

4. ACTION ON BOND. *Limitation. When time begins to run.*

The duty of the guardian to account to the wards is part of the obligation of his bond. Accordingly, before a final accounting by the guardian, the statute of limitations does not run in favor of a surety as against the wards. *Nunnery v. Day*, 64 Miss., 457.

FROM the chancery court of the first district of Hinds county.

HON. H. C. CONN, Chancellor.

This is a bill exhibited in behalf of Donna M. Rudolph and others, minors, against their former guardians, and the sureties on two distinct sets of guardians' bonds, to recover a principal sum of about $9,000, which has been lost as the result of an unauthorized loan of their funds.

The facts, as stated by the bill, are as follows: Complainants are children and sole heirs of A. L. Banks, who died intestate in 1876, leaving an unincumbered estate, consisting

of about $9,000 in money and a small amount of other property, mostly solvent credits. E. E. Banks, the widow, became guardian of complainants, under an order of the chancery court of Scott county, where the deceased had resided, and where the administration was pending, and executed a bond as guardian in the sum of $11,000, with Wm. Bell and N. C. Perry as sureties. Said guardian at once took possession of the estate of her said wards, and among other assets received was the sum of $9,000· in cash, which she deposited in the Capital State Bank, in Jackson, Hinds county, Mississippi, the bank contracting to pay her interest at the rate of eight per cent. per annum. This investment was not authorized by the court, but was made with the consent of Bell and Perry, and under an agreement between the guardian and said sureties that the money should not be withdrawn from the bank or the investment changed without their consent. Soon after this Mrs. E. E. Banks was married to W. W. Ratliff, who was engaged in mercantile business. His business was unsuccessful, and he became very much embarrassed financially, and, while thus involved and insolvent, he persuaded his wife to agree to turn over to him the money on deposit in said bank, but the bank, presumably being aware of the agreement between the guardian and her sureties, refused to permit the money to be withdrawn. Thereupon Mrs. Ratliff, the guardian, agreed with Bell and Perry, her sureties, to give another bond for $6,000, as guardian, and secure their release *pro tanto*, and then withdraw that sum, leaving $3,000 in the bank as a protection to the sureties. The new bond was signed and tendered to the chancery clerk, and accepted subject to the approval of the court. The court, of course, refused to approve the bond thus taken, or to release Bell and Perry in any manner. But, meantime, Mrs. Ratliff, with the consent of Bell, checked out $6,000 from the bank, and a short time afterward withdrew the $3,000 without his consent, and this she loaned, without security and without authority from the court, to her hus-

band, who used it in his mercantile business.    He soon afterwards failed, and made a general assignment, and nothing has ever been realized therefrom for the wards.

As soon as Bell, the surety, heard of the withdrawal of the $3,000 from the bank, and of the refusal of the court to accept a new bond in lieu of the first, he made formal application to the chancery court of Scott county to be released from further liability, and an order was made releasing him from liability for future acts of the guardian as soon as a new bond should be executed and approved.    Thereupon, in July, 1881, said guardian gave new bonds, which were approved, and, at the same time, her husband, W. W. Ratliff, qualified as co-guardian, and, thereafter they continued to act jointly in the management of the estate of the wards.

The accounts filed by the guardians did not disclose the loan to W. W. Ratliff; but the sum appeared in the accounts as money on hand, and the guardians charged themselves with the same, and interest at the rate of ten per cent.

In 1887, said guardians filed their final accounts, and the sum due by them to each ward was ascertained and directed to be paid over to their successors.    The amount due to each ward was more than $4,000.

Another guardian was appointed, but the money found to be due has never been paid, and both E. E. Ratliff and her husband are insolvent, and, moreover, have removed from the state.

This suit has been instituted in behalf of the wards, in the chancery court of the first district of Hinds county, where Bell resides.    E. E. Ratliff and W. W. Ratliff, former guardians, have been made defendants, and also Bell and Perry, sureties on the first bond, and W. P. Ratliff and others, who are sureties on the second set of bonds.

Complainants claim that they have the right to elect which set of sureties they will proceed against; that the first bondsmen are liable for the unauthorized act of the guardian in loaning the money to her husband during the life of the first

bond; and that the sureties on the second bond are liable, because W. W. Ratliff, the borrower of the money, did not become wholly insolvent and fail in business until after the second bonds were executed and approved. In order that an election between the bonds may be intelligently made, complainants pray that the sureties on both make discovery as to their solvency. Discovery was also prayed from the guardians as to all matters which might throw light on the circumstances of the loan to W. W. Ratliff and the use made of the money and assets, and of the exact status of the account at the time the second bonds were given. The bill further prays that the defendants be allowed to interplead with one another, so that a multiplicity of suits may be avoided, and that the court, by one decree, will settle the rights of all parties.

A supplemental bill was afterwards filed, but, as it does not relate to the case between Bell, the appellant, and the complainants, it is needless to set it out. All the defendants demurred to the bill, the separate demurrer of Bell assigning that there was no equity on the face of the bill; that no liability on his part is shown, and that the complainants are barred by the statute of limitations. All the demurrers were overruled, but only Bell appeals.

*Calhoon & Green*, for appellant.

The ground of relief against appellant is the alleged unauthorized loan of the wards' money during the life of the first bond. It is not averred that the guardian did not charge herself with the amount. The contention is that, notwithstanding the guardian charges herself with a loan as cash, that its investment, without an order of court, is a breach of the bond.

The loan being unauthorized, the statute treats the money as still on hand, and the relation of debtor and creditor between guardian and ward continues. As the guardian remains debtor, the fund is not a specific trust-fund. The bond,

not the investment, is the security provided, and the investment should not be *pro se* the recourse of the wards. Hence, the guardian remains bound just as before the investment. The loan, made on his own judgment and on his own responsibility, is not a breach of the bond.

The bill seeks to hold both bonds liable; the second bond because Ratliff, the borrower, became insolvent after it was executed. But Ratliff qualified as co-guardian with his wife, and it is not averred that Mrs. Ratliff, as sole guardian, did not make a full accounting.

Bell was not only discharged, but the guardianship for which he was surety terminated, and a new joint guardianship begun. The money was charged in the new accounts as cash. When Ratliff, having the money as borrowed, charged himself with it as guardian, it was legally a payment. See *Crump* v. *Gerock*, 40 Miss., 765. So charging the amount in his accounts is conclusive against the guardian that the money is on hand. *Brown* v. *Barlow*, 51 Miss., 7; *Stone* v. *Morgan*, 65 *Ib.*, 247; *State* v. *Hull*, 53 *Ib.*, 626.

The final decree in Scott county, adjudicating the amount due by the guardian, holds Ratliff and wife liable for the amount so reported as cash. We must presume the court inquired into all the facts, and held that the money was on hand. No decree was rendered against Bell. That decree can be attacked only by a proceeding to surcharge and falsify the accounts. *Jones* v. *Coon*, 5 Smed. & M., 751; Code 1880, § 2075; *Jarnagin* v. *Frank*, 59 Miss., 393.

The suit is barred by the statute of limitations of ten and seven years. If Bell was ever liable, his relation to the trust ended in 1881, when he was discharged, and the sole guardianship ceased, and time began then to run in his favor.

*Frank Johnston*, for appellees.

1. The unauthorized loan to her insolvent husband by the guardian was *per se* a breach of the bond. It was a conversion of the trust-fund, and *ipso facto* rendered her liable to

the wards. In the absence of any statute, the English rule was that guardians had no authority to loan the ward's money on any sort of personal security. 1 Cooper, 6; 3 Swanst., 84; Gilbert, Eq., 10; 3 Madd., 40; 2 Cox, 1. Code 1871, § 1217, took all power from guardians to invest the trust-funds, and places this exclusively with the court. Code 1880, § 2105, is substantially the same. The act of lending without the requisite authority is *per se* a *devastavit.* 1 Breese, 14; 111 Ill., 457; 103 *Ib.*, 142; 42 Ala., 473; 4 Fla., 112.

2. The theory that Bell was released because of the *ex parte* proceeding of taking new bonds is untenable. The idea of appellant is that the money was theoretically brought into court, and given to the new joint guardianship, and the obligation of the first bond obliterated. The bill alleges, however, that this was not done.

3. The unauthorized act of the guardian created a liability on the bond, and this was a continuing liability on the sureties, and bound them, although the failure of the borrower's business did not occur until after the second was taken. The fact that Ratliff became co-guardian, made a new bond necessary. The court did not undertake to deal with the subject of the investment.

4. The money loaned to Ratliff does not constitute all the estate; yet the entire estate was wasted. The bill is good, whatever be the law as to liability for the $9,000 loaned.

5. The statute of limitations did not begin to run until 1887, when the decrees on final settlement were rendered, and a new guardian appointed in lieu of Mrs. Ratliff and her husband. *Nunnery* v. *Day*, 64 Miss., 457.

Argued orally by *M. Green*, for appellant, and *Frank Johnston*, for appellees.

COOPER, J., delivered the opinion of the court.

The demurrer of the appellant was properly overruled.

The obligation assumed by him in becoming surety for the guardian was that the estate of the infants should be lawfully managed by the guardian and restored to them upon the termination of the guardianship. While this obligation was in force, the guardian, without authority of law, loaned the money of the wards to her husband, and it has never been repaid by him. Unless the estate is protected by the bond of the guardian, it has been wasted, and can never be restored to the infants, for Ratliff, the borrower, as well as the guardian, is insolvent. True, the appellant was, upon his petition, relieved from future liability for the acts of the guardian by the decree of the court having jurisdiction of the guardianship, by which a new bond was required, which was afterwards given. But this did not, and could not, relieve the sureties on the first bond from liability for past delinquencies of the guardian; as to those, they continued bound as before.

The final account of the guardian, and the decree of the court thereon, operated to conclusively establish the fact that the guardian was indebted to the wards in the sums for which decrees were made, and gave the right to executions against her for the same. But the decrees are not satisfaction of the demands of the wards. They are but steps in the progress of securing satisfaction, and the obligation of the sureties is that they will pay the sums found due if the guardian does not.

These decrees are conclusive against the guardian, and *prima facie* evidence against the sureties of the amount due by her to the wards. On the facts stated by the bill, and admitted by the demurrer, a large part of the sum now found to be due had been lost to the estate of the minors at and before the decree was made releasing the appellant from the bond. As to this he was then, and ever since has been, bound until the same should be returned to the guardian, or to her successor in the guardianship. This obligation cannot be discharged by the mere admission of the guardian, nor by that together with a decree that she should pay the same

to the present guardian. Payment alone can discharge the obligation. The statutes of limitation set up by the demurrer are not available to the appellant; the defense rests upon the assumption that time began to run against the wards from the time that the decree was passed discharging the appellant from liability for the future administration of the guardianship. This is an erroneous contention, for, under the obligation of the bond, the guardian was required to account with the wards, which she did not do until she rendered her final account. *Nunnery* v. *Day*, 64 Miss., 457.

*The decree is affirmed.*