MARIA PATTISON DUNN, ET AL. v. JOHN W. CLINGHAN, ET AL.

(47 South. 503.)

LIMITATION OF ACTIONS. *Guardian and ward. Suits on bond. Code* 1892, § 2738; *Code* 1906, § 3098.

Code 1892, § 2738 (Code 1906, § 3098) providing that suits upon a guardian's bond must be instituted within five years after the ward reaches majority, must be construed with the statute (Code 1880, § 2107; Code 1892, § 2223; Code 1906, § 2442) providing that the powers and duties of a guardian shall cease when the ward shall arrive at the age of twenty-one years, or be married, being over the age of eighteen years, and that, in either event, the guardian shall forthwith deliver to the ward all of the property belonging to him, and, on failure, shall be liable to an action on his bond, and, so construed, the five years' limitation prescribed does not run against suits on a guardian's official bond until he has made final settlement of his trust.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

Mrs. Dunn and others, appellants, were complainants in a suit upon a guardian's bond in the court below; Clinghan and others, appellees, sureties on the bond, were defendants there. From a decree in defendants' favor, predicated of the five years statute of limitation, Code 1892 § 2738 (Code 1906, § 3098), applicable to such suits, the complainants appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Potter & Thompson,* for appellants.

Before the enactment of Code 1892, § 2738, the period of limitation on a guardian's bond was the general six years statute The court will note that Code 1880, § 2107, provided that "The powers and duties of every guardian of a minor over the person and estate of his ward, shall cease and determine when the ward shall arrive at the age of twenty-one years, or be married, being over the age of eighteen years; and in either event he shall forthwith deliver to the ward, all the property of every description of the ward in his hands, and on failure, shall be liable to an action on his bond." Under this section, a cause of action accrued at all events on the arrival of the ward at the age of twenty-one years, the guardian failing to render proper account. The six years statute of limitations, the statute then in force, reads as follows: "All actions for which no other period of limitations is prescribed, shall be commenced within six years next after the cause of action accrued, and not after." In other words the law under the Code of 1880 provided that suits on a guardian's bond should be brought within six years after the ward became twenty-one years of age, and not after; the saving clause in favor of minors making the statute run against married and unmarried wards alike from twenty-one years of age.

The only change made by the enactment of Code 1892, § 2738, same being Code 1906, § 3098, was to change from a six years' to a five years' statute of limitations. If this be so, the decisions under the old statute with reference to the time when the statute begins to run are applicable under the recent statutes.

If, as we contend, the statutes of limitations of the Code of 1892 and the Code of 1906 with reference to guardian's bonds, is subject to the same exceptions that the former statute of limitations was subject to, then without doubt this case must be reversed, for it is well settled in the cases of *Nunnery v. Day,* 64 Miss. 457, 1 South. 636; and *Bell v. Rudolph,* 70 Miss. 234, 12

South. 153, that the statute of limitations does not run against a ward in favor of either principal or surety, until after the guardian has made a final account and settlement of his guardianship with the proper court.

It was undoubtedly the idea of the chancellor in rendering his decree in this case, that Code 1892, § 2738, same being Code 1906, § 3098, repealed the law as announced in the cases of *Nunnery v. Day,* and *Bell v. Rudolph.* We are at a loss to account for the learned chancellor's construction of this statute. The old law and the new law alike provide that the statute of limitations shall begin to run when the ward becomes twenty-one years of age. It was provided by the old statute that the statute of limitations should begin to run from the time a cause of action accrued and the cause of action accrued when the ward arrived at the age of twenty-one years. Under this statute it was provided that the ward could bring his cause of action within six years after that time and not after. Under the new statute, it is provided that he can bring his cause of action within fire years after the ward becomes twenty-one years of age, and not afterward. We can see no distinction in the statutes as to their time of commencement, the only difference we find is a change from six to five years.

Certainly if the legislature had intended to repeal a rule of law, so well established in our jurisprudence, as the rule laid down in the cases of *Nunnery v. Day* and *Bell v. Rudolph,* it would have adopted some method of making its intention known. There is no repealing clause to this statute. And while it is the well established rule in this state that repeals by implication are not favored, yet were the rule *vice versa* if repeals by implication were highly favored, we cannot see how a court could hold that the statute of limitations in question repealed the rule with reference to the commencement of actions on a guardian's bond, as announced in the cases of *Nunnery v. Day,* and *Bell v. Rudolph.'* There is not a word in this statute, construe

it in a light most favorable to a repeal of the above mentioned rule, that even intimates that such repeal is intended.

We cannot think it was the intention of the legislature to change the very salutary rule of law that provided that a guardian could not plead the statute of limitation until he had accounted with his ward. We cannot think it was the intention of the legislature to place a premium on fraud and dishonesty, in a relation of such sacred trust and confidence as that existing between a guardian and his ward, and at the same time to make it inciting and attractive for an unfaithful guardian to disregard the statute of the state that requires him to come into the proper court, and make accounting, and turn the ward's property over to him. It will be remembered, as a rule, that guardians are those in whose integrity wards most implicitly rely. As a rule wards without question accept the word of a guardian. Even in cases where the ward knows of the existence of the estate, and of the guardianship, it would be an easy matter for the guardian to put off settlement with his ward, from time to time, until the ward becomes barred by the statute of limitations. If the law is as the chancellor in the court below held, then it is only necessary for a guardian to hold his ward's property for five years after the ward becomes twenty-one years of age, and the title to the ward's property would be absolutely in the guardian, although such guardian had been holding the ward's property permissively, and not adversely. We contend that such is not the law. Why a different rule for guardians of minors less stringent on the guardian than other fiduciaries, administrators, executors, agents, etc?

Under the law as decided in the cases of *Nunnery v. Day* and *Bell v. Randolph,* the surety on a guardian's bond who of his own free will and accord has obligated himself to stand sponsor for the faithful performance of the guardian's duties can only suffer loss from his own negligence, and failure to do his duty. He can bring the guardian into court when the ward has attained his majority and require him to account with his

ward, and thus relieve himself of any further liability. If he fails to do this, and the guardian is unfaithful, the surety suffers from his own negligence, and ought not to be heard to complain.

The instant that Code 1892, § 2738, became the law, it was knit and interwoven into the framework of the common law. It became at once subject to the same exceptions that other statutes *ejusdem generis* are subject to; it must be interpreted according to the established rules of construction of statutes and its meaning must be gathered from an application of such rules of interpretation to the wording of the statute. It is true that it is the purpose of the court to find the intention of the legislature, but this intention must be found by following long established rules.

We find that the relation existing between the guardian and the sureties on the one hand and the ward on the other is that of an express trust. This trust does not grow out of the relationship of the guardian and the ward, nor does it cease when that relation terminates. This express trust is created by the terms of the bond which obligates the guardian to account and turn over the property. And there is no rule of law better established in the state of Mississippi than the rule that the statutes of limitations do not run against express trusts until some adverse position is taken by the trustee, or the relation is terminated otherwise. Wood on Limitations, § 200, p. 456; Perry on Trusts, Vol 2, § 863 and 864; *Gayden v. Wrenn,* 1 Howard, 365; *Murdock v. Hughes,* 7 Smed. & M. 219; *Siggins v. Head,* 31 Miss. 426; *Westbrook v. Munger,* 61 Miss. 330; *Cooper v. Cooper,* 61 Miss. 676; *Nunnery v. Day,* 64 Miss. 457, 1 South. 636; *Bell v. Rudolph,* 70 Miss. 234, 12 South. 153; *Stanton v. Helm,* 87 Miss. 287, 39 South. 457. What is there in the statute of limitations under consideration that takes it out of the rule above laid down and so well established in the state of Mississippi with reference to statutes *ejusdem generis?*

The trust relation created by the bond being an express trust, under the common law the statute of limitations would not begin to run until the termination of the trust relation and as statutes are to be construed in reference to the principles of the common law it is not to be presumed that the legislature intended to make any inovation on this common law rule unless such inovation is clearly expressed. *Edwards v. Goulding,* 38 Miss. 118; *Hopkins v. Danridge,* 51 Miss. 55. We cannot see that the legislature has even intimated any intention to change this common law rule with reference to the beginning of the statute to run on a guardian's bonds. We do not think the wording of the statute of limitations under consideration materially different from the statute of limitations under which *Belle v. Rudolph* and *Nunnery v. Day,* were decided.

There is no repealing clause to the statute of limitations under consideration. If the rule of law with reference to the beginning of the statute of limitations as announced in *Bell v. Rudolph,* and *Nunnery v. Day,* has been repealed, it has been repealed by implication. Repeals by implication are not favored. *Pons v. State,* 49 Miss. 1; *White v. Johnson,* 23 Miss. 368; *Beard v. Lee County,* 51 Miss. 542; *Smith v. Vicksburg,* 54 Miss. 615; *Deaton v. Burchart,* 59 Miss. 144; *Board of Education v. Aberdeen,* 56 Miss. 518.

We think the fair way to construe the statute of limitations under consideration, is to construe this statute together with the statute that requires a guardian to account when the ward becomes twenty-one years of age. All statutes in *pari materia* must be construed together. *Scott v. Searles,* 5 Smed. & M. 25. We think it a fair construction of the statute to hold that it was enacted for the benefit of those who obey the law, and fulfill their obligations to account with the ward. The law presumes every man will do his duty, and so presumes that every guardian will file a final account when the ward becomes twenty-one years of age, and thus set the statute of limitations running in his favor. The original suit under which letters of guardianship were is-

sued by the chancery court of Hinds county, Mississippi, in this cause is yet a live cause of action on the docket of that court, never having been dismissed. We know of no statute of limitations that bars the progress of a suit, until it is wound up and a final decree rendered. We think that under the original cause the chancellor could issue citation to the sureties requiring them to account. This proceeding does not differ materially, from a proceeding of that nature. There having been no judgment or decree in this cause, the statute of limitations on judgments would not run.

*Hallam & Cooper,* on same side.

Code 1906, § 3098, (Code 1892, § 2738), will not bear the construction attempted to be placed upon it by learned counsel for appellee; and to say that it will bear such construction is equivalent to saying that this statute was enacted to meet the law as announced in the case of *Nunnery v. Day,* 64 Miss. 457, 1 South. 636, and *Bell v. Rudolph,* 70 Miss. 234, 12 South. 153. If this be true then the legislature that enacted this statute into law were the veriest set of blockheads that ever disgraced the legislative halls of any state. Shades of departed statesmen! If they had intended that this statute should apply whether a final account had been filed or not, and had intended to create a limitation on this class of express trusts then why in the name of common sense did that legislature not add to the statute these words "whether a final account has been filed or not?" These words would have dispelled all doubt on the subject.

*McWillie & Thompson,* for appellees.

Appellant's citation of the cases of *Bell v. Rudolph,* 70 Miss. 234, 12 South. 153, and *Nunnery v. Day,* 64 Miss. 457, 1 South. 636, must be unavailing. The code section pleaded in this case, Code 1892, § 2738, was not involved in those cases. Indeed, it had not become the law when a bar by limitation was pleaded in those cases.

Nothing can be predicated of a trust relation existing between

the gaurdian and his wards to relieve the bar of the statute, for by the very terms of the statute the limitation was to run in favor of the obligors on the guardian's bond notwithstanding and in despite of such trust relation. It had already been decided however, before the enactment of the present code provision that the trust relation existing between an executor and a specific legatee did not prevent the running of the general statute in favor of the executor. *Young v. Cook,* 30 Miss. 320. Code 2759, § 1892, was a change in the law enacted with *Nunnery v. Day* in full view. It was intended to benefit the obligors on guardians' bonds and to fix a different time from which the statute should begin to run. The statute invoked in this case provides a special limitation in favor of the obligors on the bonds of guardians to the effect that all actions on such bonds shall be brought within five years after the ward arrives at the age of twenty-one years, and not after; and we submit that under this statute the special limitation begins to run when the ward attains his majority whether there has been a fraudulent concealment of the cause of action or not; in other words, this special statute gives the ward five years within which he may make inquiry as to his right and bring suit on the bond, and not after. If it had not been intended to cut off such claims as a fraudulent concealment and the like, there was no reason for the statute doing anything more than make the limitation on such bonds five years, for there is elsewhere a general saving clause as to those resting under the disability of minority and effect should be given to all the terms of the special statute. Code 1906, § 3106, Code 1892, § 2746.

The statute was designed to cut off antiquated claims against the obligors on such bonds as to which the evidence might have been lost in the lapse of time, and is akin to that expressed in Code 1906, § 3122, Code 1892, § 2760, providing a limitation in favor of purchasers at judicial sales even as against infants, and where the court had no jurisdiction to appoint the guardian who made the sale, and where the defendants were without no-

tice. *Hall v. Wells,* 54 Miss. 289; *Jeffries v. Dowdle,* 61 Ib.
504; *Summers v. Brady,* 56 Ib. 10; *Marlin v. Gilleylen,* 70 Ib.
324, 12 South. 254.

Under a statute providing that a suit on a constable's bond
may be brought within two years after the expiration of his term
of office, it has been held that the omission of the officers to make
a return which keeps one in ignorance of his cause of action for
breach, cannot extend the period of limitation, the rule being
based on the ground that the special statute limiting the time for
bringing the suit contains no exception. *State v. Shaffer,* 12
Mo. App. 276; See also, *Governor v. Gorden,* 15 Ala. 72.

The evil intended to be remedied by the statute is quite appar-
ent. The statute was intended to provide against the heedless-
ness of sureties on such bonds, who, signing the same through
mere good nature, paid no further attention to the course of ad-
ministration and were often brought to ruin long afterwards by
distributees of estates who had themselves been even more negli-
gent. It is idle to say that the sureties might have required a
settlement by the guardian. The legislature was dealing with
a condition and not a theory, and doubtless thought that if wards
could afford to let five years go by after attaining their majority
without proceeding for a recovery it would be only just to sure-
ties to deny them one after that time.

There is no similarity whatever between the section in ques-
tion and Code 1880, § 2107, discussed in *Nunnery v. Day,* and
the same section carried forward as Code 1892, § 2223, and
Code 1906, § 2442, and only by a forced analogy between the
two can the decision herein be sustained. The section as it ap-
pears in the Codes of 1892 and 1906 merely provides for set-
tlements by guardians when their wards attain majority and
makes them liable to suit in default of such settlement. Unlike
the section relied on by the appellant it is not a statute of limi-
tation.

There is a vast difference between the mere authorization of
suit or the declaration that one shall be liable to suit, and the

prohibition of such suits. The right to sue and the limitation of the period within which that right shall be exercised are sometimes contained in the same statute, but they are just as distinct and different as if contained in separate statutes.

We have no fault to find with *Nunnery v. Day,* 64 Miss. 457, 1 South. 636, and *Bell v. Rudolph,* 70 Miss. 234, 12 South. 153, both of which originated before the statute in question was en-acted. There is no reason, however, to call attention to the fact that those cases remain unreversed when they rest on a previous state of the statutory law, and the question arising on the code section which we invoke has never before been passed upon by this court.

The passage of a statute prohibiting suit after a certain time of course does not, even by implication, involve the repeal of a statute authorizing suit before the expiration of that time. It is entirely irrelevant to discuss what the law was with reference to express trusts before the enactment of the provision in question which in terms creates a limitation in the case of an express trust. It was entirely competent and proper for the legislature to do this. *Ita lex scripta est.*

Argued orally by *Clayton D. Potter,* for appellants, and by *T. A. McWillie,* for appellees.

Whitfield, C. J., delivered the opinion of the court.

This case is to be resolved by deciding the question whether the five-year statute of limitations provided by Code 1892, § 2738, being the same as Code 1906, § 3098, bars this action against the guardian and the sureties on his bond. It is to be noted, in this case, that no annual or final account was ever filed by the guardian. Code 1880, § 2107 reads, so far as this point is concerned, as follows: "The powers and duties of every testamentary or other guardian, over the person and estate of his ward, shall cease and be determined when such ward shall either arrive at the age of twenty-one years, or be lawfully married,

being over the age of eighteen years, and, in either event, the guardian shall forthwith deliver to the ward all the property, of every description, of said ward, in his hands, and on failure shall be liable to an action on his bond," etc. This is identical with the provisions of Code 1906, § 2442, and Code 1892, § 2223. The section under which the claim is said to be barred is Code 1892, § 2738, now Code 1906, § 3098, both of which sections read as follows:

"*Actions against Guardians or Their Sureties.* All actions against a guardian and the sureties on his bond, or either of them, by the ward, shall be commenced within five years next after the ward shall have arrived at the age of twenty-one years, and not after."

These two sections, last mentioned, have never been construed by this court up to this time, but Code 1880, § 2107, identical with Code 1906, § 2442, and Code 1892, § 2223, was construed by this court in the case of *Nunnery v. Day,* 64 Miss. 457, 1 South. 636, and that construction was reaffirmed by this court in the case of *Bell v. Rudolph,* 70 Miss. 234, 12 South. 153. In the first-named case the ward, Robert H. Day, had sued the guardian and surety on his bond, and there, just as here, the plea of the statute of limitations was invoked; in that case the statute invoked being the seven-year statute of limitations. The court said: "Our statute provides that the powers and duties of a guardian over the person and estate of his ward shall cease and determine when the ward arrives at age or marries, and that in either event the guardian shall forthwith deliver to the ward all the property of every description in his hands belonging to the ward, and that on failure to do so suit may be brought on the guardian's bond. While suit may be brought on the bond of the guardian for failure to comply with the law in this respect, the statute does not relieve him from making final account and settlement with the court; but, on the contrary, it requires that such account and settlement shall then be made. When the ward reaches majority or marries, the functions and authority

of the guardian over the person and estate of the ward for the future ends, and his obligation to make final account and settlement for the past begins, and he remains guardian for such purpose, and the statute of limitations does not begin to run in favor of him, or the sureties on his bond, until this is done. *Alston v. Alston*, 34 Ala. 15. The general rule is that the office of a trustee ceases only with the execution of his trust, and the duty of a guardian, as trustee, to account and settle, continues until he has done so and is discharged by order of the proper court. *Henderson v. Winchester*, 31 Miss. 290; *Davis v. Cheves*, 32 Miss. 317; *Denson v. Denson*, 33 Miss. 560. In cases of direct technical trusts, such as exist between guardian and ward, the statute of limitations does not run against the *cestui que trust* in favor of the trustee. The relations and privity between them are such that the possession of the trustee is the possession of the *cestui que trust*, and mere neglect of the trustee to perform the trust which he has assumed does not operate as a bar against the claim of the *cestui que trust*. Angell on Limitations, par. 166; 2 Perry on Trusts, § 863; *Jordan v. McKenzie*, 30 Miss. 32. The guardian in this case might have been compelled to acount, after it became his duty to do so, at the instance of the sureties on his bond, as well as by his ward, and the failure to compel the accounting was as much the negligence of the sureties as of the ward. *Newton v. Hammond*, 38 Ohio St. 430; *Chapin v. Livermore*, 13 Gray (Mass.) 561. The statute of limitations of seven years would have been no defense to the guardian, and so it was no defense to his sureties."

This was a square decision that although Code 1880, § 2107, authorized suit to be brought on the bond of the guardian on his failure to comply with the law in respect to filing his final account and settling the estate, nevertheless the statute did not begin to run in favor of the guardian or his sureties against the ward until the guardian had filed his final account; and the opinion further necessarily holds that the final account should be filed when the property is turned over on the arrival at majority

of the ward. And we think this is the true construction of both statutes (Code 1880, § 2107, and Code 1906, § 2442), and of the statute here invoked (Code 1892, § 2738, and Code 1906, § 3098). The purpose of both statutes was to compel the guardian to file his final account when the property was delivered up to the ward on arrival at majority of the ward, and neither the seven-year statute under the Code 1880, nor the five-year statute under Code 1892, § 2738, can be invoked in favor of the guardian or his sureties until that final account has been filed and the express trusteeship terminated. Otherwise the guardian would be able to avail himself of his own wrong, and be free from any accounting to his ward for any property, no matter how valuable, if only he should hold on to it for five years after majority. A construction of this sort would impute monumental absurdity to the legislature. It is a rational construction to hold that this statute was intended for the benefit of those guardians, and those alone, who, when their wards become twenty-one years of age, should then deliver to them their property, make their final account and be discharged. It may be said that this particular statute is special in its nature, and was aimed at suits against guardians; that the legislature of 1892, in putting this section 2738 into the Code of 1892, intended to change the rule announced in *Nunnery v. Day,* and *Bell v. Rudolph;* and that to hold that the only object the legislature could have had in enacting Code 1892, § 2738, was to change the time from seven years to five, which would bar the action, would also impute absurdity to the legislature. But there can be no possible answer to the proposition that the construction of section 2738 which would make it bar the actions against a guardian and sureties on his bond, five years from arrival at majority of the ward, without reference to whether the guardian had filed his final account and been discharged, and thus terminated his express trusteeship, would impute to the legislature a degree of absurdity infinitely greater, and put upon this statute a construction working out the grossest injustice.

Looking at the different reasons sustaining the view we an-
nounce: First, Code 1880 § 2107, (Code 1892, § 2223), has
remained the law from that time until this, being unchanged in
Code 1892, § 2223, and Code 1906, § 2442. The legislature
manifestly brought it forward with the construction put upon it
in *Nunnery v. Day* and *Bell v. Rudolph, supra.* It is exactly
the same statute from then till now, *ipsissimis verbis,* and it has
this construction announced in these two cases, *supra,* and this
alone, as its true interpretation during all this while. Second,
when Code 1892, § 2738 first became the law, it was written
into the Code without any express repeal of Code 1892, § 2223,
and without any reference to it whatever. If, therefore, Code
1880, § 2107 has ever been repealed, it has been repealed by
implication, and repeals by implication are not favored. Third,
Code 1892, § 2738, could, taken upon a technical view (which
is not the one on which we propose to rest our decision), never-
theless be sustained on the view that it reduces the period of
limitation provided in the Code of 1880 from seven years to
five years. The contention, however, that the legislature would
have passed this statute simply to reduce the time of the bar
two years, is too technical to accept it as the basis for our opin-
ion. Fourth and chiefly, *Nunnery v. Day,* was bottomed upon
the universal principle, recognized by all civilized jurisprudence
in this country and elsewhere, that the statute of limitations is
never set in motion against an express trustee until his express
trusteeship shall have been terminated; and that is a perfectly
sound and universally just principle.

The court in *Nunnery v. Day* did not allow the seven-year
statute of the Code of 1880 to bar the ward. Code 1880, § 2107
expressly authorized suit by the ward against the guardian and
his sureties on the arrival at age of the ward, and yet in that case
the ward did not sue within the seven years, and the reason giv-
en was the one we have stated—that the legislature could not
possibly have intended to change so fundamental and so just a
rule of law in the mere enactment in a statute of limitations as

to when a guardian should deliver up property to the ward, and when the ward might sue; a rule abolishing, as to minors only this universal principle. Why should any rational legislature pick out the most helpless of litigants, minor children, and peremptorily bar them from bringing a suit for account against guardian and sureties within five years after arrival at age, when that guardianship is an express trust, and yet, at the same time, leave executors, administrators, and all other express trustees open to suit and unable to invoke the statute, until their trusteeship shall have been finally terminated? That the legislature should have had such an intention is unthinkable, and this court does not propose to commit itself to the monstrous absurdity of imputing so unjust and unwise a purpose to the legislature, when any other reasonable construction can save it from such imputation. It is far wiser, and safer, to hold that the true construction of section 2738 is what the construction of Code 1880, § 2107, was; that this section, like that section, applies alone in favor of those guardians who had filed their final accounts upon the arrival at age of their wards, and had their trusteeship terminated; and that we hold now to be the true construction of Code 1892, § 2738.

It results from this that this suit was not barred by said section; and the judgment is reversed, and the cause remanded.

*Reversed.*