GUNTER *v.* CITY OF JACKSON.

CITY OF JACKSON *v.* GUNTER.

[94 South. 844, In Banc, Nos. 22890, 22891.]

1. STATUTES. *Resort must be had to purpose and intention when meaning not plain.*

   Where the meaning of a statute is not plain, resort must be had to the real purpose and intention of the legislature in adopting it, which, when ascertained, should be given effect by the court, though the letter of the statute be violated.

2. STATUTES. *Unjust or unwise purpose not imputed to legislature.*

   The court in construing a statute will not impute an unjust or unwise purpose to the legislature, when any other reasonable construction can save it from such imputation.

3. TAXATION. *Property and revenues of religious society only exempt when immediately devoted to specified purpose.*

   Under Code 1906, section 4252 (Hemingway's Code, section 6883), exempting the property and revenues of religious societies from taxation when the revenues are used for fraternal and benevolent purposes, it is only property and revenues primarily and immediately devoted to the specified purposes which are exempted, and if the property and revenues therefrom are primarily invested in trade or business for profit, they are liable to taxes, though the ultimate net income be devoted to the objects mentioned; especially in view of the public policy of the state to restrict the ownership of real and personal property by churches and the exemptions of church property as evidenced by Constitution 1890, sections 269, 270, and Code 1906, section 934 (Hemingway's Code, section 4110).

4. TAXATION. *Ordinance providing for taxation of stocks of goods of persons commencing business after February 1st violates requirement of uniformity.*

An ordinance, providing for the taxation of stocks of goods of persons commencing business after the 1st day of February of the year in which the tax is imposed, is unconstitutional because in conflict with the provision of the Constitution requiring taxation to be equal and uniform, and assessed under general laws and by uniform rules.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Two actions by the city of Jackson against R. B. Gunter, corresponding secretary treasurer Mississippi Baptist State Convention Board. Judgment in the first action for plaintiff, and defendant appeals, and in the second action for defendant, and the City appeals. Affirmed.

The taxes for 1920 involved in Case No. 22891 were based on an ordinance which was a copy of the statute involved in *Reed Bros.* v. *Board of Sup'rs of Lee County,* 126 Miss. 162, 88 So. 504 (Laws 1908, chapter 75; Hemingway's Code, sections 6889, 6890).

*George Butler,* for appellant.

*Green & Green,* for appellee.

ANDERSON, J., delivered the opinion of the court.

These two cases have the same parties; there is one question common to both, which is the only question in No. 22890, and upon the solution of which depends the remaining question in No. 22891. The parties are the Baptist Churches of this state represented by R. B. Gunter on the one hand, and the city of Jackson on the other, who for convenience will be referred to respectively as "the Church" and "City." No. 22890 is an appeal by the Church from a judgment of the circuit court of Hinds county against it in favor of the City for taxes alleged to be due the latter by the former for the year 1921 on its stock of merchandise situated in the City of Jackson and known as "Baptist Book Store." And No. 22891 is an appeal by the City from a judgment of said court refusing the City a judgment

against the Church for taxes for 1920 on said stock of merchandise at a three-fourths value, the business having. been commenced early in, but after the 1st day of February, 1920.

The book store in question is a regular mercantile venture for profit; the income, after paying expenses, being constantly reinvested in new merchandise as needed to fill in and build up its stock.   The net revenue, however, from the book store is used by the Baptist Churches in the state through the State Baptist Convention to maintain and support their principal church activities, including home missions.   The Church claims exemption from all taxes under section 4252, Code 1906 (section 6883, Hemingway's Code) ; and this is the question common to both cases.   That section provides, among other things, that all the property, real and personal, and the revenues derived therefrom, belonging to any religious or charitable society or benevolent order on the lodge system, where no dividends are declared, and where the revenues thereof are used for fraternal and benevolent purposes, shall be exempt from all state, county and municipal taxes.   What did the legislature mean by the language in the statute, "and the revenues derived therefrom?"   It will be observed that the exemption applies to both the property and the revenue derived therefrom.   Did the legislature mean to exempt the property and its first fruits only?   Or did it mean to exempt the property and the income therefrom, whether such income be the first fruits, or the net income at the end of stated periods, resulting from repeated investments of capital and income?   It is not plain from the language of the statute itself exactly what the legislature meant by the word "revenues."   If instead of that word the statute had used the word. "income," the contention of the Church would have more force.

This court has repeatedly held that where the meaning of a statute is not plain, resort must be had to the real purpose and intention of the legislature in adopting the statute, which when ascertained, the court should give effect

thereto, even though the letter of the statute be violated; that what is within the intention is within the meaning of he statute, though not within the letter, and *e converso.* *Kenington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392; *Learned* v. *Corley,* 43 Miss. 687; *Bonds* v. *Greer,* 56 Miss. 710; *Adams* v. *Y. & M. V. R. Co.,* 75 Miss. 275, 22 So. 824. And, furthermore the court in construing a statute will not impute an unjust and unwise purpose to the legislature when any other reasonable construction can save it from such imputation. *Dunn* v. *Clinghan,* 93 Miss. 310, 47 So. 503.

The policy of this state with reference to the ownership of property by religious societies as reflected by the Constitution as well as other statutes than the one here in-. volved, sheds a good deal of light on the question here. Section 269 of the Constitution declares void any devise of lands to a religious society or corporation; and section 270 makes void any bequest of money or personal property to such society, or corporation. Section 934, Code of 1906 (section 4110, Hemingway's Code), provides that any religious society may hold and own at any one place the following real property, *but no other* (italics ours) :

"(a) A house or tenement for a place of worship; (b) A house or tenement for a place of residence for its pastor or minister; (c) A house or tenement appropriated and used as a school or seminary of learning for males; (d) and another house or tenement to be appropriated and used as a school or seminary of learning for females; with a proper and reasonable quantity of ground, in each instance thereto attached; and (e) A cemetery of sufficient dimensions; (f) any religious denomination · may, in addition, own such colleges or seminaries of learning as it may think proper; and (g) a place of residence for its local clergyman in charge."

Section 4251, Code 1906 (section 6878, Hemingway's Code), provides, among other things: "The following property, and no other, shall be exempt from taxation, to wit: . . . All property, real or personal, belonging to any re-

ligious or charitable society and used exclusively for the purposes of such society, *and not for profit."* (Italics ours.)

Then later chapter 52, Laws 1900 (section 4252, Code 1906; section 6883, Hemingway's Code), the statute involved in this case, was passed, by the terms of which tax exemption was extended to all property real and personal belonging to such societies as well as the revenues derived therefrom, where no dividends are declared, and the revenues are used for fraternal and benevolent purposes. It is evident, therefore, from a consideration of our Constitution and statutes on the subject, that it is the public policy of this state to restrict to very narrow limits the ownership of real estate by religious societies, and to so limit their ownership of money and personal property as that they cannot take such property by will; and it is also apparent, to say the least of it, that up to the time of the adoption of the statute here in question in 1900 it was the policy of the state to restrict tax exemptions of church property to very narrow limits. In the face of this declared public policy is it conceivable that the legislature intended by the word "revenues" in said statute to cover capital and income which had been invested in trade, and turned and overturned times without number? We do not think the statute bears any such construction, and surely the legislature had no such intention. If the contention of the church in this case be right, then any religious society may go out into the marts of trade and commerce—in big business or little business—tax free, in competition with individuals, partnerships and corporations, who are now burdened with something like an average tax charge of five per cent. In fact a church society could own the controlling stock in the Illinois Central Railroad or all the railroads in the state for that matter (for their stock is personal property) and operate them tax free for the church. It would not be necessary to stop at that; it could own the larger part of the money and personal property in the state (for there is no limit to that except the right to take by will), and not only such prop-

erty, but all income therefrom would be tax free, provided such property and its income be devoted to church purposes as defined by the statute. To thus construe the statute would attribute to the legislature the purpose to encourage the churches to become commercialized. That is unbelievable. We conclude therefore that it is only property and the revenues therefrom which are primarily and immediately devoted to the purposes set out in the statute which are exempted from taxes; that if such property and the revenues therefrom are primarily invested in trade or any other business for profit they are liable to taxes, even though the ultimate net income be devoted to the objects referred to in the statute. This view renders it unnecessary to decide whether funds devoted by a religious society to the propagation of its doctrines can be said to be devoted to fraternal and benevolent purpose in the sense of the statute here involved.

Case No. 22891 involves an additional question which is the identical question involved in *Reed Bros.* v. *Lee County,* 126 Miss. 162, 88 So. 504, which if decided in favor of the Church will relieve its book store from taxes for 1920; and we must so decide, unless we are willing to overrule the Reed case. Its soundness is attacked with a good deal of ability and force, but we see no reason to disturb the holding of the court in that case.

It follows from these views that both of these cases are affirmed.

*Affirmed.*