327 So.2d 288 (1976)
George M. BAKER
v.
STATE of Mississippi.
No. 48665.
Supreme Court of Mississippi.
February 10, 1976.
Rehearing Denied March 16, 1976.
*290 Nichols, Gore & Hilburn, Poole & Marks, Jackson, Robertshaw & Merideth, J. Murray Akers, Greenville, Dannye Lee Hunter, Forest, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, INZER and WALKER, JJ.
WALKER, Justice.
The appellant, George M. Baker, was tried and convicted of the murder of his ex-wife, Patricia Coleman Baker, in the Circuit Court of the First Judicial District of Hinds County, Mississippi. From a verdict of guilty and a sentence to life imprisonment, he prosecutes this appeal. We affirm.
On the night of October 13, 1973, appellant Baker, after having dinner at a local restaurant, returned home with his second wife of ten years and told her that he would be "right back." The appellant then got into his truck, drove to the residence of his ex-wife, Patricia Coleman Baker, whom he had prearranged to meet outside her house, and shot her three times with a .44 magnum carbine rifle. He then returned to his home where he told his present wife, Joy Baker, "I think Pat was shot." In response to a question from her, he said "There was this face and there was a loud noise."
Baker entered a plea of not guilty by reason of insanity.
We will consider only those assignments of error which we feel warrant discussion.

I.
The appellant first contends that the trial court erred in overruling his motion to quash the indictment and the special venire.
Prior to the jury being empaneled, appellant moved to quash the indictment on the ground that the members of the grand jury, the special venire and the petit jury were not selected from qualified electors or freeholders residing in the entire county. The grand jury, special venire and petit jury were selected from what is designated as Judicial District No. 1 of Hinds County, Mississippi. The appellant contends that the jurors were selected from this area of Hinds County under the mistaken assumption of law that Hinds County is divided into two judicial districts. He contends that such is not the case and that the county has not been divided into two judicial districts since 1906.
A review of the pertinent statutes is helpful. Hinds County was originally divided into two court districts in 1858 and this was brought forward in the Code of 1871 as follows:
§ 92. HINDS COUNTY is divided into two court districts with the following limits (established December 2d, 1858): The first district is composed of all that portion of Hinds county lying east of the range line between ranges one and two, west, with the place for holding the court therein, at the court-house or city hall, at the city of Jackson.
§ 93. The second district is composed of all of that portion of Hinds county lying west of the range line between one and two, west, with the place of holding courts therein, at the court-house in the town of Raymond.
These statutes were not brought forward in any subsequent Code and the appellant contends that the Act of Adoption of each succeeding Code explicitly repealed all omitted laws of a general character. The sections of the Codes relied upon by appellant are as follows:
Mississippi Code of 1906, Act of Adoption:
§ 13. On and after the first day of October, 1906, all laws of a general character not brought forward and embodied *291 in the Mississippi code of 1906 shall be thereafter repealed; but this shall not apply to any act of the legislature adopted at the present session thereof.
Mississippi Code of 1930, Act of Adoption:
§ 15. The Mississippi Code of 1930 shall take effect and be in force from and after the first day of November, 1930, and all laws of a general character not brought forward or embodied in said code, except laws granting exemptions from taxation for a period of years, shall be thereafter repealed; but this shall not apply to any act of the present legislature which is not incorporated in said code.
Also see Mississippi Code 1942 Annotated section 11 (1956) and Mississippi Code Annotated section 1-1-19 (1972).
In support of his contention that the statute which divided Hinds County into two separate judicial districts was a general law, appellant cites Carter v. Harrison County Election Commission,[1] 183 So.2d 630 (Miss. 1966) which dealt with an act dividing Harrison County into separate judicial districts  and which as a practical matter could only apply to Harrison County  where this Court held that the act was not in violation of Mississippi Constitution, Article 4, Section 90 (1890), which prohibits the enactment of local, private or special acts.
In construing Mississippi Code of 1906, section 13, which states that: "On and after the first day of October, 1906, all laws of a general character not brought forward and embodied in the Mississippi code of 1906 shall be thereafter repealed ...," we must look to the intent of the Legislature. (Emphasis added).
We have held in a number of cases that in construing a statute the Court must seek the intention of the Legislature, and, knowing it, must adopt that interpretation which will meet the real meaning of the Legislature. Carter v. Harrison County Election Commission, supra; Beard v. Stanley, 205 Miss. 723, 39 So.2d 317 (1949); Rawlings v. Ladner, 174 Miss. 611, 165 So. 427 (1936); Kennington v. Hemingway, 101 Miss. 259, 57 So. 809 (1911). Furthermore, the Court in construing a statute will not impute an unjust or unwise purpose to the Legislature when any other reasonable construction can save it from such imputation. Beard v. Stanley, supra; Hendrix v. Foote, 205 Miss. 1, 38 So.2d 111 (1948); Gunter v. City of Jackson, 130 Miss. 637, 94 So. 844 (1922); Dunn v. Clinghan, 93 Miss. 310, 47 So. 503 (1908).
With these rules in mind, we find that the Mississippi Code of 1906 actually recognized the existence of two separate judicial districts in Hinds County and fixed the court terms for those districts in both the circuit and chancery courts. Miss. Code §§ 501, 680 (1906). Furthermore, since the enactment of the Mississippi Code of 1906, the Legislature has many times recognized the existence of two judicial districts in Hinds County by the enactment of numerous statutes dealing with the courts and court terms of those two districts. Miss. Code Anno. §§ 254, 451 (Hemingway 1917); Miss. Code Anno. §§ 259, 463 (Hemingway 1927); Miss. Code Anno. §§ 318, 473 (1930); Miss. Code 1942 Anno. §§ 1220, 1401 (1956); Miss. Code Anno. §§ 9-5-17, 9-7-23 (1972).
It is clear to us that the Legislature did not intend to repeal sections 92 and 93 of the Code of 1871 which divided Hinds County into two separate judicial districts. *292 These two statutes, which referred to Hinds County by name and which only applied to Hinds County, were not of such a "general character" as to be repealed by the Mississippi Code of 1906 when they were not brought forward into that Code.

II.
It is next contended that the trial judge committed reversible error by a comment that he made when ruling on an objection.
The defense of insanity was based in part, on the residual effects of an alleged brain injury supposedly received by the appellant in September, 1971, when he fell from a ten-foot scaffold and sustained an injury to the head.
Two psychiatrists testified on appellant's behalf on the assumption that appellant sustained a brain injury as a result of the fall. Six other witnesses, including appellant's wife, testified as to what they considered personality changes which he underwent subsequent to the injury of September, 1971. Dr. Floy Moore, a psychiatrist, testified that appellant was psychotic on the night he shot and killed his ex-wife; that appellant did not know the nature and quality of his acts; and, that he did not, at the time, know the difference between right and wrong. Dr. Moore based his opinion on two primary observations, namely, a non-psychotic, organic brain syndrome with brain trauma and appellant's diabetic condition which was purportedly out of control and subject to influence by numerous emotional factors.
The appellant complains of the following colloquy between the judge and the prosecutors which occurred during the latter stages of the direct examination of Dr. Moore:
(By Dr. Moore)
A... .
Now, as I reconstructed the situation, these various factors seemed to have been present  very close disturbing factors and situations  these are very close to this particular episode. Remember, all through this, I am saying my feeling is the diabetes is out of control and the emotional factors are influencing it and that the brain trauma or brain injury has decreased his ability to function and respond.

MR. ROYALS (Assistant District Attorney):
Your Honor, I object to brain injury. I don't believe there is any evidence in here anywhere about any brain injury. That would be misleading.
BY THE COURT:
There is no demonstrated organic brain injury, that's correct.
.....
BY THE COURT:
I'll overrule the objection and you can take care of that on cross examination.
No objection to the trial judge's remark was interposed by appellant at that stage of the proceedings and Dr. Moore continued his testimony, responding to questions for a time period covering eight pages of the record before the defense counsel objected to the court's statement. Appellant's counsel explained that he had delayed making known his objection to the court's remark because he wanted to save the court's time as far as getting through with the witness' testimony. It is evident that counsel did not, at the time, consider the court's statement to be of serious magnitude.
An objection to the testimony of a witness, conduct of opposing counsel or a remark of the court should be made contemporaneously with the occurrence or matter complained of so that the court may, when possible, correct the error with *293 proper instructions to the jury. One primary reason for making the objection contemporaneously with the event complained of is so that the court can more accurately know what transpired and not have to rely on its memory which may, as in this case, be clouded by subsequent testimony. The reason for such a rule is graphically demonstrated by what occurred in this case. Counsel for appellant waited until the witness had concluded his testimony and then made a motion for a mistrial. No request was made of the judge to correct his alleged improper statement by instructing the jury to disregard it. When the matter was later brought to the attention of the judge, his recollection was "... my statement was that there was no demonstrated brain injury by encephalogram... ." Counsel accepted this explanation and made no request to have the court reporter read her notes with reference to the incident. Under these circumstances, the appellant cannot now be heard to complain.
Moreover, numerous witnesses, including the doctor who saw the appellant at the time, testified that appellant had fallen from a scaffold in September, 1971, and that he had treated him for an injury to the head. Whether there was a brain injury resulting from the head injury was not shown by any direct evidence. This is, in effect, what the trial judge said and his statement was correct in that regard.

III.
The appellant's next assignment of error is that the trial court erred in overruling his motion to quash the indictment due to the district attorney's actions in allegedly obstructing the appellant's preparation of his defense. The appellant was arrested at approximately 10:45 on the evening of October 13, 1973. Thereafter, on October 16, 1973, he was transferred to Doctors Hospital due to his diabetic condition. On October 16, appellant was seen by Dr. Pineda, a psychiatrist. On October 17, four days after appellant's arrest, the district attorney ordered that the appellant was not to be seen by a psychiatrist in the absence of a court order.
Appellant contends that as a result of the district attorney's conduct, it was not until March 11, 1974, (5 months later) that the defendant was seen and interviewed at length by a psychiatrist. This allegation is without merit. Although it was improper for the district attorney to interfere with the psychiatric examination of appellant while in the hospital, the interference complained of lasted no more than two days. Mr. Peters, the district attorney, testified that he rescinded the order the following day after it was given. Mr. Gore, the attorney, representing the appellant testified: "... in all fairness to Mr. Peters I think he changed his mind a day or two later. We were both a little bit mad the day we talked to each other over the phone. I know I was." There is nothing in the record to support the appellant's contention that the district attorney's interference with the preparation of his defense of insanity continued from October 17, 1973, until March 11, 1974. It is undisputed that there was no interference by the district attorney from the date of appellant's arrest on October 13, 1973, until October 16, 1973, and from October 18 until the trial. In this regard, it is pertinent to note that Dr. Floy Moore and Dr. William Dudley, defendant's psychiatrists, who testified as to the possible effect that appellant's diabetic condition might have on his mental processes agreed that the sooner after an event an individual is examined the more accurate would be the diagnosis. Dr. Abel testifying for the State acknowledged that the best way to make a proper judgment would have been to have a blood sugar reading at the time of the event. However, this being impossible, he stated that the next best thing would be to try to *294 bring about conditions that were close to the individual's condition at the time of the incident.
We have carefully considered the appellant's contention and are of the opinion that, although the district attorney should not have interfered with the appellant's psychiatric examination, the interference was not at the critical stage, i.e., immediately after the shooting, but occurred some three days later and lasted for only two days, at most. The interference did not in any way prevent the appellant from fully presenting his defense of insanity. The appellant did not go to trial for a period of five months after the alleged interference. During that period of time, the appellant had ample opportunity to, and in fact did, obtain psychiatrists to evaluate his physical and mental condition and to prepare to testify in his defense. These psychiatrists fully explained the possible effects of diabetes on the mental processes of appellant. In their opinion, he did not know the difference between right and wrong nor did he appreciate the nature and quality of his acts at the time of the killing. Under the facts of this case, the district attorney's conduct did not amount to reversible error.

IV.
The appellant next assigns as error that the trial court erred in allowing Dr. Holloman to express an opinion on the defendant's sanity when he was not properly qualified.
The appellant contends that as a part of the state's rebuttal to the defendant's testimony, Dr. Holloman, an intern at the University Medical Center, was allowed to testify, over objection, that on the night of October 13, 1973, the appellant did know the difference between right and wrong.
Assuming arguendo that Dr. Holloman was not qualified to express such an opinion, the record reveals that at no point in Dr. Holloman's testimony did the appellant object to the witness' testifying as an expert on the question of appellant's sanity. In fact, there were only two objections interposed during Dr. Holloman's testimony. The first objection is not relevant to the error complained of and will not be discussed. The next objection came later in Dr. Holloman's testimony after the following series of pertinent questions and answers:
Q. Other than a PHD in Physiology and Biophysics, what else, if anything, have you studied, please, sir?
A. I also have an MD degree.
Q. Are you licensed to practice medicine in the State of Mississippi?
A. I am.
Dr. Holloman then testified as to his experience in the teaching of physiology and in research on metabolic processes. He was then asked the following series of questions:
Q. Have you sat in the courtroom and heard the testimony in this case?
A. I have.
Q. And have you seen the Defendant testify and heard him testify?
A. I have.
Q. And have you looked at and studied and evaluated all of the records in this case, both from a medical and from a psysiological [sic] point of view?
A. I have.
Q. And, from doing this, have you formed an opinion, based on a reasonable medical certainty, as to whether this Defendant, on the night of October 13, 1973, could appreciate the nature *295 and quality of his acts and whether he knew the difference between right and wrong?
A. I have.
MR. HUNTER:
We object to this, Your Honor.
BY THE COURT:
Overruled.
MR. ROYALS:
Q. And what is your opinion?
A. That, on the night of October 13, 1973, he did know the difference between right and wrong.
The appellant's objection was general, lacking in specificity, and did not apprise the trial court of the basis for the objection. Moreover, even after the defendant developed, on cross-examination, that Dr. Holloman was not a psychiatrist he did not interpose any objection to the doctor having expressed an opinion with regard to appellant's sanity, nor did he make a motion to exclude the doctor's testimony on such grounds. Therefore, the appellant cannot now complain that the trial judge did not anticipate the ground for the objection. The rule is that when counsel objects to evidence, he must point out to the trial judge the specific reason for or the ground of the objection or else the objection is waived. Norman v. State, 302 So.2d 254 (Miss. 1974).

V.
The appellant further contends that the trial court erred in not allowing Mrs. Asher Ainsworth, a licensed practical nurse, to testify before the jury.
A proffer of her testimony was made in the absence of the jury for the purpose of showing the results of urine tests which she made on appellant during the course of the trial. She recorded his blood-sugar count on the days during the trial and testified as to the amount of insulin she gave appellant on particular days. The witness explained the effects of a low-sugar count and high-sugar count upon a person, and the particular effect that it had upon the appellant's physical and mental state.
We are of the opinion that the court correctly sustained the State's objection to Mrs. Ainsworth's testimony. There was no attempt made by appellant to show that Mrs. Ainsworth was qualified to run urine tests, or to give an opinion as to the effect of a high-sugar count or low-sugar count upon a person's physical and mental condition.
The fact that Mrs. Ainsworth had been a licensed practical nurse for five years, had been performing nursing work for thirty years, and was familiar with testing a diabetic's urine, did not qualify her as an expert in this field. If she had special training in this field, the extent of it should have been related to the court so that it could make a determination of whether she possessed such learning, training, and experience as to permit her to testify in this special field.
We do not reach the question of whether her testimony, if otherwise admissible, was objectionable as being too remote in time to the act with which appellant was being tried.
We have meticulously considered this record and the points raised by appellant's brief and are of the opinion that no reversible error was committed in the lower court.
Therefore, the judgment of the lower court is affirmed.
Affirmed.
GILLESPIE, C.J., PATTERSON, P.J., and INZER, SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
NOTES
[1] The act which was construed in Carter, supra, and the statute now under consideration dividing Hinds County into two separate judicial districts are prime examples of acts which do not violate the Mississippi Constitution, Article 4, Section 90 (1890), but yet only have local application. The Constitution does not prohibit the enactment of all local, private or special laws but only prohibits the enactment of local, private or special laws in the twenty-one enumerated cases found in the Constitution, Section 90.