**Malcolm Joe DAVIS,**
**Petitioner–Appellee,**
**Cross–Appellant,**

v.

**Steve W. PUCKETT, Superintendent of the Mississippi State Penitentiary, et al., Respondents–Appellants, Cross–Appellees.**

**No. 87–4564.**

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1988.

Rehearing and Rehearing En Banc
Denied Nov. 16, 1988.

Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, Miss., for respondents-appellants, cross-appellees.

Dixon L. Pyles, Jackson, Miss., for petitioner-appellee, cross-appellant.

Before WISDOM, GEE and JONES, Circuit Judges.

GEE, Circuit Judge:

On April 13, 1980, a jury in Pearl River County, Mississippi, convicted Malcolm Joe Davis of rape and sentenced him to thirty years imprisonment. After appealing his conviction unsuccessfully in state court, Davis filed a petition in federal district court for habeas corpus relief, asserting that his conviction contravened the constitution in various respects. Davis raised three major claims: First, that the trial court erroneously admitted his confession into evidence and thus violated his due process rights under the Fifth and Fourteenth Amendments, the confession being the fruit of an impermissible interrogation by police after he had invoked his right to counsel; second, that comments made by the prosecutor in his closing argument regarding Davis's failure to "deny that he had committed the offense" were prejudicial and improper under the due process clauses of the Fifth and Fourteenth Amendments; and finally, that the delay of over one year in bringing him to trial violated his Sixth Amendment right to a speedy trial.

Based on a magistrate's report, the district court granted the petition for habeas relief, finding that Davis's constitutional rights were violated on the first two grounds stated above. As for the third ground, the court concluded that, although it was an unfortunate one, the delay did not rise to the level of a constitutional violation. Mississippi appeals the district court's decisions regarding the confession and the prosecutor's comments, maintaining that the court failed to recognize procedural bars to review of the merits of these two issues that had been applied by the Mississippi Supreme Court. Davis appeals the district court's finding that he did not suffer prejudice from the delay in bringing him to trial. We reverse.

*Background*

On a March morning in 1979, a housewife was confronted and raped at her home in Pearl River County, Mississippi, by a man wearing "knee high" stockings over his face and hands. In order to prevent identification, the assailant forced her to douche.

*After her assailant fled, she tried to telephone for help, but the instrument had been disconnected. She then drove to her husband's office, after which he accompanied her to the hospital. The physician who examined her found no injury or evidence of sperm. The federal magistrate's report noted the physician's testimony in the state trial that his examination was complicated by the fact that the victim was menstruating and was forced to douche.* Shortly thereafter, she provided the Sheriff's Department with an account of the incident and described the physical characteristics of her assailant.

Davis was taken into custody later the same day. Suspicion had focused on Davis because witnesses had seen him and his truck near the victim's home. Moreover, four knee-high stockings were found under a bridge near the home, and their containers were discovered in Davis's truck. A checkout girl in the local market recalled selling the stockings to Davis a few days before the rape. At trial, the victim testified that Davis had repaired her washing machine several times.

The district court found that while in custody Davis was advised of his *Miranda* rights and signed a waiver of those rights. When interrogation began, however, he asked to be allowed to call his attorney, who told Davis that he would be at the jail to visit with him shortly. The attorney never appeared, however, and at approximately 11:00 p.m. on the evening of the crime Sheriff Holliday and Auxiliary Deputy McCaleb began questioning him once

more. During this interrogation, Davis was again advised of his rights. He again signed a waiver of his right to counsel, but this time he admitted to the crime and signed two statements detailing his involvement.

Davis was arrested on March 9, 1979, and was indicted seven days later. His arraignment did not take place until November 15, however, and his trial did not begin until April 10 of the following year. Before trial, Davis requested that the statements that he gave while in custody be suppressed. The trial court delayed its decision until trial and then ruled that the waiver was valid and that the statements were admissible. No formal objection to the introduction of these statements was made at trial after the court's ruling. On appeal, the Mississippi Supreme Court found that this failure to object contemporaneously waived the objection and precluded that court from further consideration of the issue.

Finally, at the conclusion of the evidence, the prosecution made a statement, unpreserved by a Bill of Exceptions, which Davis alleges constituted a comment on his failure to testify in his own defense at trial. The trial judge ruled that the prosecutor's comments referred to Davis's behavior in custody and not to his failure to testify at trial.

### The Constitutional Violations
#### I. Davis's Right to Counsel
##### A General Right?

▆ Davis contends that the district court was correct in holding that the sheriff violated his Fifth and Fourteenth Amendment rights by initiating another round of interrogation after Davis had explicitly stated that he wanted to speak with his lawyer.

The Supreme Court has provided guidance in evaluating this issue. As a general rule, an accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for assistance of counsel. *See Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1980). In developing this "prophylactic rule," the Court has identified two distinct inquiries: First, a court must decide whether the accused actually invoked his right to counsel; and second, if he did so, his responses to further questioning are admissible *only* on a finding that he (a) initated further discussions with the police, and (b) knowingly and intelligently *waived* the right he had invoked. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (emphasis added).

It should be noted that a valid waiver "cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1980). *See also Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1410–11, 89 L.Ed.2d 631 (1986) (Sixth Amendment discussion).

In the case before us, Davis asked for his attorney. At this the police quite properly ceased all interrogation. When Davis's counsel failed to appear, however, the *police* initiated the next round of interrogation. Thus because the police and not the accused initiated the dialogue, even though he was advised of his rights and signed a waiver, his subsequent confession should not have been received in evidence.[1] Of this, however, more later.

---

1. Supreme Court authority and our own recognizes a limited invocation of the right to counsel. See *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987).

Our Circuit has applied this theory of a limited invocation in *Griffin v. Lynaugh*, 823 F.2d 856 (1987). There the defendant asked unambiguously to see *his* attorney, and the police granted the request. After Griffin had conclud-

ed his conversation with his attorney, the police inquired again whether Griffin wanted to speak with another attorney. Griffin stated clearly that he did not want to speak to another attorney at that time. Before interrogation resumed, Griffin was once again given his *Miranda* rights. Because there was no police coercion of his subsequent confession, this Court held that there was no constitutional objective to be

**1038**

## II. *The Prosecutor's Improper Comments*

■ The district court found that the prosecution made improper comments to the jury in closing argument with respect to Davis's failure to deny that he had committed the crime. Consequently, it held that Davis's Fifth Amendment rights were violated in that the jury might have taken the prosecutor's comments to refer to Davis's failure to testify in his own defense. Review of the prosecutor's comments, however, is hampered by the defense counsel's failure to "preserve the closing argument for the record by a bill of exceptions or otherwise." *Davis v. State,* 406 So.2d 795, 801 (Miss.1981).

In evaluating the extent to which Davis's constitutional rights may have been prejudiced by the prosecutor's comments, it is important to note that the trial court stated in the *presence* of the jury:

Let the record show that the Assistant Attorney was arguing the case, and in his argument of speaking of the times that the statements were made by the defendant and in reference to those statements, *he made the statement that all the defendant had to do at that time was deny that he had committed the offense.* Upon him stating that, the defense attorneys have now moved the Court for a mistrial. The *Court finds* that the *statements* made by the Assistant District Attorney were made *in re-*

gard to *9 March '79,* and in the early morning of 10 March '79, and *in conjunction with the statements that were made to the Sheriff* and the other witness at said time and place and were *not in manner referring to any other time,* place, circumstance or situation, and for this reason, the motion be and the same is hereby overruled.

We have set forth guidelines for analyzing such prosecutorial comments. "A prosecutor's argument will be deemed a reference to defendant's failure to testify if (1) such comment is the prosecutor's *manifest intent* or (2) it is of such a character 'that the jury would naturally and necessarily' interpret the comment as such." *United States v. Soudan,* 812 F.2d 920, 930 (5th Cir.1986) (citations omitted) (emphasis added).

Given what was preserved in the record, we cannot conclude that the prosecutor's closing comments were a reference to Davis's failure to testify. The trial court defined the prosecutor's manifest intent, finding that the prosecutor's comments referred to the period of initial custody and interrogation where Davis did remain silent in expectation of consulting with his attorney. In addition, the fact that the court read its evaluation of the comments into the record in the presence of the jury precludes us from holding that the jury "naturally and necessarily" interpreted the pros-

---

served by suppressing the voluntary confession. *Id.* at 863.

In the present case, Davis asked for his attorney. It appears, however, that he had not concluded his consultations with his attorney before the police reinitiated interrogation. The district court found that although Davis's attorney told him that he would come to the jail shortly after their telephone conversation, the attorney did not do so. Moreover, it is not clear from the record whether the police specifically asked Davis after his conversation with his attorney whether or not he desired to speak with any other attorney. Rather, testimony indicates only that Davis neither asked for another lawyer nor refused to answer questions without counsel. It is clear, though, that before reinitiating the interrogation, the police knew that Davis still was expecting to see his attorney and yet they continued to converse casually with him.

The evidence does not support a finding that Davis limited his invocation of a right to counsel to *his* attorney. First, in *Griffin,* the defendant concluded his consultation with his attorney. *Griffin,* 823 F.2d at 859. Second, in that case the police asked the defendant if he wanted to call another lawyer and he declined. *Id.* These two features, not present in the case before us, clarified for the police that the invocation was limited and that they would not be overreaching their role in their adversarial relationship with the suspect. Here, it is unclear whether or not Davis was consciously exercising his free choice to sign the confession or whether he was still waiting for his attorney to appear and unwittingly admitted to the crime. The Supreme Court has cautioned that in situations where the intentions of the defendant are ambiguous, it is a "settled approach to questions of waiver that requires us to give a broad, rather than narrow, interpretation to a defendant's request for counsel." *Barrett,* 107 S.Ct. at 832.

ecutor's comments to refer to Davis's decision not to testify at trial. Because it is clear that the prosecutor's comments were acceptable under the guidelines of *Soudan,* we need not consider the additional requirement that *Soudan* highlights as necessary before reversal is appropriate: "that such [constitutional] violations need not lead to reversal if harmless beyond a reasonable doubt." *Soudan,* 812 F.2d at 931. Thus, given the record, because the prosecutor's comments cannot be deemed a reference to Davis's failure to testify at trial, the district court erred in finding a constitutional violation of Davis's Fifth Amendment rights.

### Procedural Bar

■ The State maintains that Davis's constitutional claims stemming from the trial court's admission into evidence of his confession and the closing comments by the prosecutor are procedurally barred. It points out that although the Mississippi Supreme Court ruled on the merits of these

two constitutional claims, it also relied on the procedural bar that "absent a contemporaneous motion to exclude during the trial, the objection to the admission of the confession was waived." *Davis, supra,* 406 So.2d at 799.

Despite our earlier conclusion that Davis's confession should not have been received, such a procedural defect, if found, bars habeas relief. We have held that "when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural defect." *Cook v. Lynaugh,* 821 F.2d 1072, 1077 (5th Cir. 1987). *See also Thompson v. Lynaugh,* 821 F.2d 1080 (5th Cir.1987). There can be no doubt, in view of the matter quoted above, that the Mississippi Court rested its decision on alternative grounds, one of which was procedural default. That being so, this claim for habeas relief must fail.[2]

---

2. Mississippi's rule for preserving an issue for appeal is that "an objection to the testimony of a witness, conduct of opposing counsel or a remark of the court should be made *contemporaneously with the occurrence* or matter complained so that the court may, when possible, correct the error with proper instructions to the jury." *Baker v. State,* 327 So.2d 288, 292–93 (Miss.1976) (emphasis added). The policy behind this "contemporaneous objection" rule is that "the court can more accurately know what transpired and not have to rely on its memory which may ... be clouded by subsequent testimony." *Id.* at 293.

Given the circumstances of this case, however, if we were free to do so we would not rely solely on the dictionary meaning of "contemporaneous" in deciding whether or not Davis cleared Mississippi's procedural hurdle. Davis had filed written motions to suppress his confession and all incriminating statements before trial, as was his option under Mississippi law. *See Henry v. State,* 198 So.2d 213, 216 (Miss. 1967). Shortly before the start of the trial, the court and the parties agreed that "those motions [Motions to Suppress Confessions and/or Oral Statements of the Defendant] [would] be taken up during the trial...." On the second day of the trial, the court took up those questions

As *reserved by the Court,* previously to starting of the trial of this case, has been on Motion to Suppress Confession, filed March the 30th, 1979, and also there is in the record a second motion of the defendant to suppress all incriminating statements, filed November the

5th, 1979, and dated November the 2nd, 1979, and it was—I believe it is clearly setout [sic] in the record that both of these motions would be considered at the time and all proof offered would go to all the allegations included in both motions. *All right, at this time, both motions be and same are hereby overruled....* (emphasis added).

As the passages emphasized above indicate, defense counsel had moved the court to suppress Davis's confession; and a decision on that motion had been reserved by the court. The decision on Davis's objections to the evidence was eventually made by the court at trial, at the time when the waivers and confessions were received in evidence. Such a procedure seems to us to satisfy the reason for the contemporaneous objection rule; and where the reason for a rule is met, in our view the rule is satisfied as well. The reasons for this rule are to avoid sand-bagging the trial judge and to settle the record (to the extent possible) as the case proceeds. Both seem satisfied by a contemporaneous *ruling* on a carried objection to evidence, made when the evidence is received. The situation is quite different where a motion to suppress is both made and ruled on *in limine;* for the judge may well have developed a different perspective on an item of evidence in the course of events, so that a renewed objection when it is offered may cause its exclusion.

Even so, we must abide by the rule of *Cook.*

## Right to a Speedy Trial

Davis asserts that he was denied the right to a speedy trial in violation of the Sixth Amendment. Although the district court reviewing the habeas petition found the Pearl River County Court's procedure "extremely troublesome" and "deficient," it dismissed the claim, finding that no prejudice was proven by Davis.

As we have noted, Davis was formally indicted on March 16, 1979 and arraigned on November 15, 1979. His trial, however, did not begin until April 10, 1980. This was a delay of about five months between arraignment and trial and of about thirteen months between indictment and trial. These delays were partly the result of the unique character of the Pearl River County Court. Between March 1979 and April 1980, the court was open to hear criminal cases only between March 12th and April 27th and between November 5th and November 23rd, 1979.

First, it is important to note that the Mississippi Speedy Trial Act requires that indictments be tried within 270 days (about 9 months) of arraignment unless good cause can be shown for delay. See Mississippi Speedy Trial Act, Mississippi Code Ann. § 99–17–1 (Supp.1987). Davis has no claim under that statute in that the delay between his arraignment and trial was about five months.

■ It is not impossible, however, for Davis to have a constitutional claim despite the State's compliance with its statute. As Mississippi courts have acknowledged, "the constitutional right to a speedy trial, as opposed to section 99–17–1, attaches at the time of a formal indictment or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Perry v. State*, 419 So.2d 194, 198 (Miss.1982). The Supreme Court has adopted a four-factor balancing test to assess whether an accused's Sixth Amendment rights have been violated. The factors to be balanced are: 1) the length of delay; 2) the reason for delay; 3) the defendant's assertion of his rights; and 4) the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). In evaluating the factors, the district court was not clearly erroneous in deciding that Davis's constitutional right to a speedy trial had not been violated.

First, the Supreme Court has identified the length of delay as a threshold factor in the balancing test. See *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. "Until there is some delay which is presumptively prejudicial, there is no necessity to go into the balance." *Id.* Our Circuit's decisions would place the thirteen month delay between Davis's indictment and trial as "between the 10½ month delay not considered presumptively prejudicial in *United States v. Maizumi*, 526 F.2d 848 (5th Cir.1976), and the 15–month delay considered presumptively prejudicial in *United States v. Avalos*, 541 F.2d 1100 (5th Cir.1976)." *United States v. Greer*, 655 F.2d 51, 52–53 (5th Cir.1981). This being so, it will be necessary to examine the remaining factors. In fact, the Supreme Court has pointed out that "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker, supra,* 407 U.S. at 530–31, 92 S.Ct. at 2192.

Second, the reasons for the delay may be attributable to both sides and the Court's limited time for hearing cases. The district court points out that no significance could be attached to the failure to try case in March or April of 1979. *Neither* side would have had enough time to prepare. In fact, shortly after the April 1979 term ended, the court granted *Davis*'s motion for a continuance until November—an indication that Davis's interest in a speedy trial was not impinged upon before November.

In November, the State successfully moved to continue the case to March 1980 on the ground that there was no district attorney available to try the case. In evaluating this "cause," the Supreme Court has noted that a "neutral" reason such as overcrowded courts should weigh less heavily against the government. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. Thus while the burden of the delay tilts toward

the government, Davis should be allowed to complain only about the five-month period between November 1979, when the ex-parte motion was granted and April 1980 when the trial began. Although Davis alone did not cause the first delay, there is no indication that he was ready to go to trial in April 1979. If anything, all indications are that he willingly cooperated in the first delay by making a variety of procedural motions such as transferring the case. *See Perry v. State*, 419 So.2d 194, 199 (Miss.1982) ("[I]f the defendant caused the delay, he will not be allowed to complain."); *see also Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir.1987) (Constitutional and state claims of violation of right to speedy trial denied because defendant *participated* in delay by plea bargaining).

Third, the district court found that Davis first asserted his right to a speedy trial only in November, when he objected to the court's grant to the Government of a continuance until the following court term in April 1980. As is noted above, the reason for this delay was a shortage of prosecutorial staff.

Fourth, the *Barker* test considers the prejudice to the defendant resulting from the delay. The Supreme Court has identified three interests that must be considered: a) preventing oppressive pre-trial incarceration; b) minimizing the anxiety and concern of the accused; and c) limiting the possibility that the defense will be impaired. *Barker, supra*, 407 U.S. at 532, 92 S.Ct. at 2193. In weighing these factors, the district court found that Davis did not prove that he suffered prejudice from the delay. We agree. The five-month delay that can be attributed to the state does not seem oppressive, given the State's unfortunate but legitimate problem of a manpower deficiency. Further, the court's careful assessment of the Government's proffered reason minimized Davis's anxiety that the decision was arbitrary. We do not find an abuse of discretion in the court's decision to grant the continuance. Finally, the district court found, and we agree, that Davis had not proved that his defense was impaired. Although it is conceivable that there were lost alibi witnesses because of

memory loss due to the delay, the district court correctly pointed out that defense counsel should have taken sworn statements from these alibi witnesses as soon as the charges were brought. These affidavits could have been used at trial to refresh the memory of those witnesses.

Having run the *Barker* balancing test, we conclude that the district court did not clearly err in determining that Davis failed to show that his Sixth Amendment rights were violated. To be sure, a thirteen-month delay between indictment and trial is unfortunate. It is important to note, however, that only five months of the delay are attributable to the Government and that this was the result of a "neutral" reason—a shortage of prosecutorial staff. Moreover, part of the delay was due to the short time allowed for the Pearl River County Court to sit.

## Conclusion

Davis's constitutional rights under the Fifth and Fourteenth Amendments were violated by the police, who impermissibly reinitiated interrogation even though Davis had not finished consulting with his attorney. Moreover, the trial court erroneously received the fruits of this impermissible interrogation in evidence. It is the rule of our Circuit, however, that when a state court bases its decision on alternate grounds of procedural default and the merits, we must deny habeas relief unless "good cause" and "prejudice" are shown. Neither is, and the district court erred in granting the writ on this ground.

The district court also erred in concluding that the prosecutor's comments were prejudicial. Although the closing arguments were not preserved for review by a Bill of Exception, it is clear that the trial court clarified the reference for the jury. Finally, the district court was correct in finding that Davis's Sixth Amendment rights to a speedy trial were not violated. Although there were delays for which the Government bore responsibility, these did not rise to the level of a constitutional

violation. The judgment of the district court granting relief is

REVERSED.