UNITED STATES of America, Plaintiff,

v.

Freddy ROGERS, Defendant.

Crim. A. No. J89–00083(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 9, 1991.

U.S. Asst. Atty. Woody Bond, Jackson, Miss., for plaintiff.

Frank Trapp, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

On December 9, 1989, shortly before the statute of limitations was to expire, the grand jury returned a three-count indictment against defendant Freddy Rogers charging him with violations of 18 U.S.C. § 666(a)(2), proscribing bribery of public officials.[1] At the request of the United States Attorney's office, the indictment was sealed and remained sealed until August 1991. On August 27, 1991, the defendant was arraigned and a trial date of December 2, 1991 was set. Defendant moved to dismiss the indictment contending, *inter alia*, that his right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution has been violated, and that the prosecution is barred from proceeding on the offenses charged inasmuch as the applicable statute of limitations has expired. The United States responded to the defendant's motion and an evidentiary hearing was held before the court on December 2, 1991. For the reasons that follow, the court concludes that the motion is well taken and should be granted.

During 1988, Rogers, owner of an asphalt business, Freddy Rogers Construction, Inc., became the subject of an FBI investigation into allegations that he was paying kickbacks to public officials, including then Mississippi Highway Commissioner Sam Waggoner, in return for the officials' ordering asphalt from his company. The investigation expanded from allegations of bribery by defendant to an investigation of potential federal tax violations, in particular, evasion and/or filing false returns. According to the government, in the course of the investigation of the bribery charges, evidence was uncovered that Rogers was diverting asphalt from state jobs and using it for private jobs, but not reporting the income from those private jobs.

Rogers became aware of the FBI's interest in his activities concerning the alleged payment of kickbacks or bribes by at least August 1988, when FBI agents contacted him to discuss grand jury subpoenas which had been served on his company and its employees. Rogers communicated with his civil attorney concerning his conversation with FBI agents and his counsellor arranged an immediate meeting with the United States Attorney's office to discuss the possibility of Rogers' cooperation in the investigation. The government insisted, however, that Mr. Rogers plead to some criminal offense and consequently, Rogers retained attorney Frank W. Trapp as counsel in connection with the criminal investigation.

According to an affidavit submitted by Mr. Trapp on the present motion, after being retained, he initiated discussions with Assistant United States Attorneys James Tucker and Ruth Morgan concerning Mr. Rogers' willingness to fully cooperate in their investigation and possible disposition of any charges that could be filed against his client. In September 1988, Mr. Trapp made a proffer to AUSAs Tucker and Morgan of information that his client could

---

1. 18 U.S.C. § 666(a)(2) provides, in pertinent part:

Whoever ... [where the government agency receives $10,000 or more from a federal program in a 12-month period of the giving or offer] ... corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization of the state ... in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more, shall be fined under this title, imprisoned not more than ten years, or both.

provide concerning various public officials. By late September, it was apparent to Mr. Trapp that the United States Attorney's office was not amenable to a disposition of Mr. Rogers' case pursuant to a cooperation arrangement, as had been offered to numerous other contractors and vendors who had been victims of extortionate demands by highway commissioners. Instead, the United States Attorney's office insisted that Mr. Rogers plead to criminal charges with a limit on incarceration or that his company plead to criminal charges and pay a substantial fine. Mr. Trapp informed the government attorneys that the offered disposition was not acceptable since in his view the government was not likely to succeed in obtaining a conviction of defendant on any of the charges posed for a number of reasons, including counsel's belief that the evidence would show that Mr. Rogers was the victim of an extortionate shakedown scheme and that the funds extorted from him were after-tax dollars, that is, came from reported income. By letter dated November 3, 1988, Mr. Trapp was further advised of his client's poor health, which was confirmed by Mr. Rogers' physician.

The record reflects no further communication between the government and defense counsel until April 21, 1989, when AUSA Morgan wrote Mr. Trapp, asking that Mr. Rogers provide certain bank documents requested by the IRS in connection with its probe of defendant's activities. Morgan stated, "As you know, the Internal Revenue Service is conducting a criminal investigation of your client, Mr. Freddy Rogers." The government continued its investigation of perceived income tax irregularities throughout 1989, but without further contact with defendant or his counsel. Toward the end of the year, the United States Attorney's office, realizing that the statute of limitations would run on the bribery charges in late 1989 or early 1990, prior to the completion of the income tax investigation, made a decision to seek an indictment charging the bribery offenses in December 1989 in order to toll the statute of limitations. The instant indictment was returned on December 19, 1989 and sealed at the request of the United States Attor-

ney's office. According to the government, it wanted the indictment to be sealed and remain sealed until the completion of the investigation of alleged income tax violations, because it believed that the tax investigation would result in future prosecutable tax offenses grounded in the conduct that gave rise to the bribery indictment, and it intended to secure an indictment and move to consolidate the bribery and tax offense indictments for trial.

The government submits that in late 1990 or early 1991, AUSA Tucker learned that the Department of Justice Tax Division would not approve prosecution of Mr. Rogers for evasion or filing false returns as had been anticipated by the United States Attorney's office in December 1989. Rather, the approved prosecution would be for excise tax violations only, offenses which AUSA Tucker did not believe could be joined with the bribery indictment. Therefore, on January 8, 1991, AUSA Woody Bond, who had been assigned to the case in October 1990, informed Mr. Trapp of the sealed indictment and of the possibility of an indictment of his client on charges of excise tax violations. According to government counsel, the government's intent at that time was to unseal the instant indictment and to arraign the defendant on the bribery charges at the earliest convenience. However, Mr. Trapp was interested in pursuing discussions toward a disposition of charges brought and proposed to be brought against his client and asked that the indictment remain under seal until it was determined if a disposition could be reached.

Within a few days of being advised of the indictment, Mr. Trapp reviewed the indictment at the United States Attorney's office. Following a January 22, 1991 meeting with AUSA Bond to discuss the matter, Mr. Trapp wrote to AUSA Bond, requesting to be advised of the government's basis for sealing the indictment and the reason for keeping it sealed for over a year, and observing that the statute of limitations would have run on at least two if not all three of the counts by the time the indictment was disclosed to him. He further

requested that his client be afforded his right to a "speedy and expeditious trial."

Several meetings and exchanges between defense counsel and AUSA Bond, as well as other government personnel, to discuss the disposition of the bribery charges and the tax investigation ultimately proved fruitless. A final meeting between Mr. Trapp and United States Attorney George Phillips and AUSAs Tucker and Bond concluded with both sides leaving on the table proposals for a settlement of the charges.

In July 1991, having received no response to its proposal from defendant or his counsel, the United States Attorney's office decided to present the excise tax case to the grand jury in August 1991. A decision was made to keep the instant indictment sealed "as a matter of convenience," so that in the event an indictment was returned on the tax violations, the defendant could be arraigned on both indictments at one time. There also remained some hope that the two indictments might be joined for trial. Neither defendant nor his counsel was made aware of the government's decision in this regard; instead, in late August 1991, AUSA Bond contacted Mr. Trapp to arrange for the defendant's arraignment on the instant indictment, as well as a seven-count indictment charging defendant with willful failure to file federal excise tax returns, which had been returned on August 21, 1991. A week later, on August 27, defendant was arraigned on both indictments. A trial was scheduled for November 4, 1991 on the excise tax charges and trial on the indictment in this case was set for December 2, 1991.

SIXTH AMENDMENT

■ Defendant's primary contention in this case is that he has been denied his Sixth Amendment right to a speedy trial due to the delay between the return of the instant indictment and the date scheduled for trial of those charges. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." An accused's right to a speedy trial is activated when a criminal prosecution is begun, whether by arrest, the return of an indictment, or the filing of information, whichever occurs first. *United States v. Mac-Donald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *Dillingham v. United States,* 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *United States v. Greer,* 655 F.2d 51, 52 (5th Cir. Unit A 1981). In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court established the approach to be used in determining whether a defendant's right to a speedy trial has been denied, which involves an *ad hoc* balancing of four factors identified by the Court: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. If, on balancing these factors, a violation is found, dismissal of the indictment is "the only possible remedy." *Strunk v. United States,* 412 U.S. 434, 439–40, 93 S.Ct. 2260, 2263–64, 37 L.Ed.2d 56 (1973) (quoting *Barker* ).

■ As a threshold matter, the court is required to determine whether the length of the delay is presumptively prejudicial since under *Barker,* only a delay which is "presumptively prejudicial" warrants inquiry into the remaining *Barker* factors. 407 U.S. at 530, 92 S.Ct. at 2192; *U.S. v. Parker,* 586 F.2d 422 (5th Cir.1978) (issue to be resolved is whether length of delay was so unreasonable as to require consideration of remaining three factors). Defendant maintains that the delay of almost two years between December 19, 1989, the return date, and December 2, 1991, the first trial setting given him at his arraignment, is presumptively prejudicial, thus mandating judicial evaluation of the other factors in the *Barker* balancing test. In the court's opinion, a two year delay between the indictment and the trial date is presumptively prejudicial. *See Davis v. Puckett,* 857 F.2d 1035, 1040 (5th Cir.1988) (thirteen month delay necessitated examination of remaining *Barker* factors); *United States v. Greer,* 655 F.2d at 52–53 (eleven

and three-quarter month delay sufficient to warrant further inquiry); *United States v. Carter*, 603 F.2d 1204, 1206–07 (5th Cir. 1979) (sixteen month delay substantial enough to warrant further inquiry); *United States v. Edwards*, 577 F.2d 883, 888 (5th Cir.) (twenty month delay held to be presumptively prejudicial), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *United States v. Avalos*, 541 F.2d 1100, 1108 (5th Cir.1976) (fifteen month delay considered presumptively prejudicial), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977).

Not all of the delay in this case is attributable to acts or omissions of the government. Defense counsel was informed of the sealed indictment on January 8, 1991, and requested that it remain sealed while negotiations for a disposition of the charges were ongoing. When it became apparent to the government in July that a settlement was not in the offing, the indictment was unsealed, defendant was arraigned and trial was scheduled. Though a delay in scheduling settlement meetings may have been due to the government, the length of that delay was not unreasonable under the circumstances. Moreover, the lack of action between the March 14 meeting and the unsealing of the indictment five months later in August 1991 appears to have been the result of a misunderstanding between the government and defense counsel. Mr. Trapp left the March 14 meeting under the impression that the government was to respond as to whether it was amenable to acceptance of his proposal for a disposition, while the government believed that Mr. Trapp and his client were to consider its proposal and advise whether they found the proposal acceptable. That is, each assumed that the other was to make the next move. The court accepts the government's representation that the defendant's case went on the "back burner" while the government awaited some response from Mr. Trapp. The court is further persuaded that the decision of the government in July 1991, upon realizing that no response was to be forthcoming, to keep the indictment sealed for another month was as much for the convenience of the defendant as for the government. The government concededly still entertained some hope of having the excise tax charges and bribery charges joined for trial which, in the court's view, would not have been a proper reason for allowing delay to continue. However, the government was also aware, as it had been repeatedly informed by defense counsel, of Mr. Rogers' precarious health condition and the extreme psychological strain and anxiety which resulted from encounters with the government, and was motivated at least in part by such concerns in deciding to subject him to but one arraignment. Finally, it appears that once the defendant was arraigned, he was scheduled to be tried within a reasonable time.

■ Based on the foregoing, the court is persuaded that the majority of the delay from and after January 8, 1991 was not caused by the government but rather was delay to which the defendant consented and was thus justified. *See Davis v. Puckett*, 857 F.2d 1035, 1041 (5th Cir.1988) (defendant not heard to complain of delay in which he willingly cooperated); *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987) (speedy trial claim denied because defendant participated in delay by plea bargaining), *cert. denied*, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81. The remainder of that delay was either justified or merely negligent delay which would not weigh heavily against the government. *Strunk*, 412 U.S. at 436, 93 S.Ct. at 2261 (unintentional delays must be considered but are weighed less heavily than intentional delay); *United States v. Greene*, 578 F.2d 648, 655 (5th Cir.1978) (delay attributable to simple bureaucratic inefficiency weighed less heavily than deliberate delay), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979). Nevertheless, the government was clearly responsible for the approximate thirteen month delay between the date the indictment was returned and the date defendant was informed of the indictment, and it is the government which bears the burden to justify this delay. *Greer*, 655 F.2d at 53. Having considered the evidence of record, the court is com-

pelled to conclude that the explanation provided by the government does not stand as sufficient justification for this delay.

The government acknowledges that it sought an indictment on the bribery charges in December of 1989 for the specific purpose of tolling the statute of limitations which was about to expire, and that it had the indictment sealed so that it could postpone prosecution on the bribery charges while it pursued an income tax investigation which it hoped would result in an indictment that could be joined with the instant bribery indictment. The government insists that it was motivated by a belief that the tax investigation, as it was being conducted in and after December 1989, would result in an indictment on income tax offenses which were somehow related to the bribery charges. The court perceives as dubious, at best, the suggestion that there was some relationship between the failure to report income received from diverted asphalt and the paying of bribes to public officials. The government attempts to explain a connection between the investigation of payments for diverted asphalt and the bribery charges by stating that funds received from those private jobs was a possible source of money with which the defendant may have paid the alleged bribes. However, the government is not required to prove as an element of a violation of 18 U.S.C. § 666 the source of funds used to pay a bribe nor is proof concerning whether or not the funds were reported as income an element of a section 666 offense.

Moreover, Rules 8(a) and 13 of the Federal Rules of Criminal Procedure permit joinder of indictments for trial only if the offenses charged in the indictments are of the same or similar character or based on the same act or transaction.[2] In the opinion of the court, even had the income tax offenses which the government was investigating and for which the government delayed prosecution of the present indictment resulted in an indictment, any such indictment would not have qualified for joinder with the instant bribery indictment. That the defendant may have failed to report income on asphalt improperly diverted from state to private jobs simply has little or no bearing on whether the defendant paid bribes to public officials.[3] The alleged crimes were separate and unrelated.[4]

The defendant argues that the government's delay was nothing more than a strategic ploy to make conviction on the bribery charges easier by joining them with tax evasion charges in the hope of thereby bolstering the defendant's culpability and eviscerating what it anticipated would be defendant's defense to the charges, lack of

---

**2.** Rule 13 of the Federal Rules of Criminal Procedure provides that

The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants, if there is more than one, could have been joined in a single indictment or information.

Federal Rule of Criminal Procedure 8(a) governs joinder of offenses in an indictment or information, and provides in pertinent part, that:

Two or more offenses may be charged in the same indictment or information ... if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more actions or transactions connected together or constituting parts of a common scheme or plan.

**3.** The court would note that the record demonstrates that even before seeking the indictment on the bribery charges, the government had evidence of income from diverted asphalt and defendant's failure to report such income, and it in fact proposes to seek the introduction of such evidence at a trial of this indictment under Rule 404(b) of the Federal Rules of Evidence as proof of defendant's intent.

**4.** The government cites this court's consolidation order in *United States v. Snyder*, No. J88–00095(L) (S.D.Miss. Aug. 4, 1989), as supportive of its contention that the bribery offenses could have been joined with any indicted income tax offenses. *Snyder*, however, is readily distinguishable. There, a first indictment charged the defendant with bribery offenses. A second indictment contained counts of extortion and additional counts of filing false income tax returns predicated upon the defendant's failure to report the extorted funds as income. The court found that the bribery and extortion counts in the two indictments were of the same type or character, and the tax counts, while dissimilar in nature, were nevertheless directly related to the extortion counts. What is missing in this case is a relationship between the bribery charges and the income tax charges which the government proposed to pursue to indictment.

intent. The government was aware even before the indictment of defendant on the bribery charges of his position that he lacked criminal intent since he paid taxes on the funds paid to public officials and was a victim of extortionate demands by the public officials. The government reasons that if it could prove that the defendant had a "stash" of money somewhere through evidence that he derived income from diverted asphalt, such evidence would be useful to prove the defendant's intent to commit the bribery and thereby undermine his defense of lack of intent. While counsel for the government maintained that judicial economy and the defendant's convenience would have been served in the event an indictment on the income tax charges had been obtained by joinder of those offenses for trial, he conceded that the government could have gained a strategic advantage in its effort to obtain a conviction on the bribery counts, and that as a practical matter the defendant would have been disadvantaged by the government's awaiting indictment on additional income tax charges in order to join both indictments for trial. He denied, however, that the government's motive in delaying prosecution of the instant indictment was to gain such a strategic advantage or to place defendant at a defensive disadvantage. This denial, however, rings hollow in light of the clear detrimental effect which defendant would have suffered had the government's hopes of a joint prosecution been realized.

■ The court is of course cognizant that in considering the reasons for delay, "the primary focus is not prejudicial effect but culpability." *Avalos*, 541 F.2d at 1113. Here, though, the court is left with the firm impression that the government harbored some motivation to delay trial of the bribery charges with an eye toward gathering evidence under what the court perceives to have been a misguided belief that such evidence would have undermined the defendant's defense of lack of intent. *See Avalos*, 541 F.2d at 1113 (court should be far less tolerant where prosecution has tampered with the defendant's defense); *United States v. Carter*, 603 F.2d 1204, 1207 (5th Cir.1979) (purposeful attempt to

delay trial to prejudice defendant or gain tactical advantage should weigh heavily against government).

It bears emphasis that this is not a case in which the government delayed prosecution for a reasonable period of time in order to accumulate evidence necessary to make a prima facie case against the accused. *Cf. United States v. Rosson*, 441 F.2d 242 (5th Cir.), *cert. denied*, 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78 (1971) (cited in *Avalos*). Indeed, the government does not contend that it had insufficient evidence to bring Mr. Rogers to trial when the indictment was sealed. To the contrary, it submits that "by December, 1989, the investigation of the bribery charges was finished." Rather, the delay was the result of an effort by the government to investigate a separate crime. That is not a valid investigative justification for the delay. *Avalos*, 541 F.2d at 1114.

In *Avalos*, the court observed that attempts by the prosecution to gain a tactical advantage through delay, as contrasted with negligent delay or justified delay, weigh heavily against the government in the speedy trial analysis. *Id.* at 1113. The court here concludes that the delay at issue was neither negligent nor justified. Rather, the sole reason for the delay was the government's unsuccessful effort to gain a strategic advantage in its prosecution of defendant on the bribery charges.

■ The third factor in the *Barker* analysis is whether the defendant asserted his right to a speedy trial. As previously observed, the record reveals that upon learning of the indictment, defendant's counsel promptly requested that his client be afforded his right to a "speedy and expeditious trial." However, at the same time, he requested that the indictment remain sealed while a disposition of the charges was sought. Correspondence from Mr. Trapp indicates that he perceived a possible speedy trial violation as soon as he learned of the indictment and that he wished to preserve his client's right to assert such violation by formally requesting compliance by the government with Sixth

Amendment dictates. At the same time, however, he was interested in securing for his client a favorable disposition of the charges and thus implicitly consented to additional delay. One might suggest that the demand by defendant for a speedy trial in this case was merely pro forma and that the defendant did not "aggressively assert[ ] [his] desire for a speedy trial," as the court in *Avalos* suggested that he must. *Avalos*, 541 F.2d at 1115; *United States v. Dennard*, 722 F.2d 1510, 1513 (11th Cir.1984) (defendant's persistence in attempting to surrender himself upon learning of sealed indictment weighed in his favor). However, the bulk of the delay, and indeed the only intentional delay by the government, occurred prior to the defendant's or his counsel's even being made aware of the indictment. The argument could be made, therefore, that the damage had already been done and could not be undone by pursuing a speedy trial at that point. In view of these circumstances, the court concludes that this factor weighs neither for nor against the defendant, but rather is neutral, and does not affect the balance.

■ This brings the court to the fourth and final *Barker* factor. It has been held that "where the delay is not only excessive but the result of unexcused inaction or misconduct by the Government, it is prima facie prejudicial," and the burden thus shifts to the government to demonstrate that the defendant was not prejudiced. *Murray v. Wainwright*, 450 F.2d 465, 471 (5th Cir.1971). Indeed, there can come a point where the first three factors are so heavily weighted against the government that prejudice, either actual or presumed, becomes "totally irrelevant." *Avalos*, 541 F.2d at 1113 (quoting *Hoskins v. Wainwright*, 485 F.2d 1186, 1192 (5th Cir.1973); *see also Dennard*, 722 F.2d at 1513 (11th Cir.1984) (well settled that when first three *Barker* factors weigh heavily against government, defendant need not demonstrate actual prejudice); *United States v. Mitchell*, 769 F.2d 1544 (11th Cir.1985) (unless all of first three *Barker* factors weigh heavily against government, defendant required to show actual prejudice), *cert. de-*

*nied*, 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986); *cf. United States v. Doggett*, 906 F.2d 573, 580–81 (11th Cir. 1990) (where two of factors weigh against government and none favors government, defendant's showing of prejudice need not be as strong as if majority of factors had weighed against defendant), *cert. granted*, —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991). Regardless of who has the burden on this issue, or the degree of prejudice which must be shown, actual prejudice to Mr. Rogers in the case *sub judice* is manifest.

■ The prejudice factor is evaluated in light of the interest sought to be protected by the Sixth Amendment speedy trial guarantee: "(a) to prevent oppressive pre-trial incarceration; (b) to minimize the anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. The only interest implicated here is impairment of the defense, since there was no pre-trial incarceration of Mr. Rogers and since he could not have suffered any unusual pre-trial anxiety or concern inasmuch as during the relevant time period, he was unaware of the indictment. The Supreme Court has rejected the notion that "prejudice" is confined to the impairment of the defendant's ability to defend himself. *See Moore v. Arizona*, 414 U.S. 25, 26–27, 94 S.Ct. 188, 189–90, 38 L.Ed.2d 183 (1973) (per curiam); *United States v. Dreyer*, 533 F.2d 112, 115 (3d Cir.1976). Here, however, the evidence does strongly support the proposition that the delay has severely impaired Mr. Rogers' ability to assist in the preparation of his defense. An uncontroverted affidavit submitted by Dr. Ralph Daniels, M.D., Mr. Rogers' treating physician, establishes that the defendant's health, while poor prior to the indictment, has deteriorated considerably since the indictment was returned and sealed. His diseases, including ventricular tachycardia, diabetes, arteriosclerotic heart disease and depression, along with the medication that he takes in treatment of these conditions, have caused him to suffer disorientation, memory lapses and impairment of cognitive .

functions. The government does not dispute defendant's mental or physical state, as related by Dr. Daniels, but instead contends that there is no causal relationship between the defendant's present condition and the delay since Mr. Rogers' current ailments appear to be merely the natural progression of heart disease from which he suffered prior to the instant investigation. In the court's opinion, however, whether the defendant's current condition is the result of an illness which preexisted the indictment is irrelevant. What is relevant is whether the defendant has suffered prejudice as the result of the delay, and on this point, the court considers the proof uncontroverted. As a result of defendant's impaired cognitive functions, he has been rendered unable to meaningfully assist in his defense. *See United States v. Brown,* 520 F.2d 1106, 1111–12 (D.C.Cir.1975) (personal prejudice found where defendant lost contact with some or all potential witnesses); *United States v. Re,* 335 F.Supp. 1176 (S.D.N.Y.1972) (prejudice may arise from deterioration of health and advancing age during delay interim; indictment dismissed where doctor's affidavit demonstrated that seventy-five year old defendant's health had progressively worsened since time of indictment and that a trial could precipitate severe angina with myocardial ischemia).

In conclusion, having considered the totality of the circumstances, the court holds that defendant's right to a speedy trial has been denied such that the indictment exhibited against him must be dismissed.

## STATUTE OF LIMITATIONS

 Although defendant cites additional bases for dismissal of the indictment, in view of the court's ruling on his speedy trial argument, those grounds need not be addressed. Nevertheless, the court would briefly consider his contention concerning the expiration of the statute of limitations, which the court finds, like his speedy trial argument, to be meritorious. Defendant argues that because the indictment was not properly sealed, the return of the indictment did not toll the statute of limitations, which had expired by the time the indictment was unsealed in August 1991. The government though contends that in order for the three counts to stand, the statute of limitations need only have been tolled by January 1, 1990, and that tolling was effected by the return of the indictment. 18 U.S.C. § 3282 provides

> [N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

For the purpose of tolling the statute of limitations, a sealed indictment is generally "found" when it is returned by the grand jury, rather than when it is unsealed, so long as the indictment was properly sealed. *United States v. Maroun,* 699 F.Supp. 5, 6 (D.Mass.1988); *United States v. Lakin,* 875 F.2d 168, 170 (8th Cir.1989); *United States v. Srulowitz,* 819 F.2d 37, 40 (2d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). In *Srulowitz,* the court observed that "[w]here the prosecution can demonstrate that the decision to keep an indictment secret is informed by sound discretion in the public interest, the date of return, rather than the date of unsealing will establish the time the indictment is 'found.'" *Srulowitz,* 819 F.2d at 37. Conversely, where an indictment is sealed for an improper purpose, the indictment is not "found" until the indictment is unsealed. In that event, should the limitations period run before the unsealing, the indictment will be dismissed as time-barred. Finally, even where the government's decision to seal an indictment is found to have been proper, i.e., based on a legitimate prosecutorial objective, a showing by defendant of substantial actual prejudice occurring during the period of the sealing warrants dismissal of the indictment if the statute of limitations expires before the indictment is unsealed. In such cases, the indictment is not considered "found" until it is unsealed. The first question which presents itself in the case at bar is whether the indictment was properly sealed. Rule 6(e) of the Federal Rules of Criminal Procedure provides:

> The court may direct that an indictment shall be kept secret until the defendant is

in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except where necessary for the issuance and execution of a warrant or summons.

Most courts which have addressed the question have held that reasons other than taking the defendant into custody may support sealing of an indictment. *See, e.g., United States v. Lakin,* 875 F.2d at 171 (judicial officer may grant government's request to seal for any legitimate prosecutorial objective or where otherwise required by public interest); *United States v. Southland Corp.,* 760 F.2d 1366, 1380 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985). They hold that the court may grant a motion by the government to seal an indictment for any legitimate prosecutorial need. In the case at bar, there was no legitimate prosecutorial need for sealing the indictment. The government has not demonstrated that the sealing was necessary in order to maintain secrecy. The government does not claim that the defendant could not be located or was likely to flee. Moreover, the evidence is uncontroverted that the defendant was aware of the bribery investigation as early as 1988 and of the income tax investigation at least by April 1989. No evidence has been presented to suggest that advising the defendant of the fact of the bribery indictment would have adversely affected the government tax investigation. The simple fact is that the government wanted to pursue its investigation into what it perceived to be income tax irregularities with the hope of ultimately indicting defendant on those additional charges and joining all the charges for trial. However, the court has already concluded that the government's decision to proceed in that manner was not properly motivated. In short, this court cannot agree that a unilateral extension by the government of the limitations period under the guise of "gathering evidence" would be a "legitimate prosecutorial objective" in view of the length of the delay, *see United States v. Heckler,* 428 F.Supp. 269, 272 (S.D.N.Y.1976) (where defendants are available, government may

not seal indictment for more than reasonable time after statute of limitations has expired; more than twelve months is not reasonable), involved and the court's conclusion that the evidence sought to be gathered by the government beyond the limitations period was not related to or necessary for the prosecution of the charges under indictment. As the court in *Heckler* aptly observed,

> The decision of the government to seal this indictment ... was certainly an intentional act by which it gained a tactical advantage to the prejudice of defendants, and the government should be charged with that gain.

*Id.* at 272. The court concludes that the sealing of the indictment did not toll the statute of limitations and that consequently, the government is time-barred from prosecution of the offenses charged in the indictment.

## CONCLUSION

Based on the foregoing, it is ordered that defendant's motion to dismiss the indictment against him is granted.